# EXHIBIT A



**ASSISTANT TO THE SECRETARY OF WAR**
1400 DEFENSE PENTAGON
WASHINGTON, D.C.  20301-1400

OCT 0 6 2025

PUBLIC AFFAIRS

MEMORANDUM FOR SENIOR PENTAGON LEADERSHIP

SUBJECT:  Implementation of New Media In-brief

      The attached documents implement the Secretary of War memorandum, "Updated Physical Control Measures for Press/Media Access Within the Pentagon," dated May 23, 2025. All members of the press requesting to be issued a Pentagon Facility Alternate Credential (PFAC), will be required to read and sign the updated in-brief form outlining information security requirements, the new physical control measures, and Department of War expectations of their compliance with safety and security requirements. This memorandum and attachments supersede the "Implementation of New Media In-Brief," dated September 18, 2025.

      The package that will be provided to the member of the press as part of the in-brief includes the following:

- Pentagon Reservation In-brief for Media Members
- Appendix A, "Denial, Revocation, or Non-Renewal of Pentagon Facility Alternative Credentials"
- Appendix B, "Additional Press Identifier Badge"
- Appendix C, SW memo, "Updated Physical Control Measures for Press/Media Access Within the Pentagon"
- Appendix D, graphic showing the areas on the first and second floor of the Pentagon where press do not require a new escort
- Appendix E, graphic showing the route that press can take to access the River Entrance on weekends and holidays

      In addition to the Additional Press Identifier Badge depicted in Appendix B, the Pentagon Force Protection Agency (PFPA) will begin issuing new PFACs to the press in coming weeks. Priority of issuance of the new PFACs will be to members of the news media, including equipment crew members, with existing PFACs expiring by October 31, 2025, and will run through October 31, 2025. Beginning November 1, 2025, PFPA will then commence issuing new PFACS for members of the news media with existing PFACS expiring after October 31, 2025, starting with resident members (i.e., those with current authorized workspace in the Pentagon), followed by non-resident members.  The new PFACs will have "PRESS" clearly imprinted on them in red letters both vertically and horizontally to assist in identifying members of the press within the Pentagon.

      I request your assistance in ensuring that all personnel in your Component are aware of the physical control measures, including the requirement to provide escorts for media coming into your spaces for approved interviews.  Additionally, if personnel see any news media outside of the areas depicted in Appendix D that do not have an escort, they should direct them back to the designated no-escort required areas and alert the Pentagon Press Operations office at 703-697-5131.

My POC for this action is Mr. Christopher Garver, Pentagon Press Operations, christopher.c.garver.civ@mail.mil or 703-695-3886.

Sean Parnell

Attachments:
As stated

# PENTAGON RESERVATION IN-BRIEF FOR MEDIA MEMBERS

NAME: _____    DATE: _____

The purpose of this briefing is to inform you, as a member of the news media who has been granted access to the Pentagon Reservation and issued a Pentagon Facilities Alternative Credential (PFAC), also known as a Department of War Building Pass or a Pentagon badge, of the rules regarding conduct on the Pentagon Reservation. Failure to abide by these rules may result in suspension or revocation of your PFAC and loss of access. Additionally, this briefing informs you of the procedures associated with denying, revoking, or not renewing the issuance of a PFAC, including contesting such a decision (see Appendix A).

<u>General Security</u>

Members of the news media do not possess a legal right to access the Pentagon; rather, such access is a privilege, subject to the discretion of government authorities and is regulated by federal law and Department of War policy. Legally, the press has no greater right of access than the public. While members of the news media may be granted access under certain conditions, this is a privilege extended by the government and not a constitutionally protected right.

Pursuant to 10 U.S.C. § 2674, the Secretary of War has jurisdiction, custody, and control over, and responsibility for, the operation, maintenance, and management of the Pentagon Reservation. Under this statute, the Secretary is authorized to prescribe appropriate regulations to ensure the safe, efficient, and secure operation of the Pentagon Reservation. 32 C.F.R. Part 234 addresses conduct on the Pentagon Reservation, and section 234.4 of this part makes clear that entering or remaining on Pentagon property without express invitation or consent from those with lawful control is prohibited. The regulation applies "to all persons entering in or on the property" (see 32 C.F.R. § 234.2), including members of the news media, and provides that individuals who violate a Department rule or regulation may be ordered to leave or barred from reentry. This framework establishes that access is not open to the public or the press as a matter of right but is instead a controlled privilege.

Be alert for suspicious activity and immediately report any unusual activity and/or circumstances to the Pentagon Force Protection Agency (PFPA) at (703) 697-1001.

Ensure office doors are locked, and property is secure when exiting your office or cubicle.

Every individual entering the building is subject to random metal detector and X-ray inspection of personal belongings. Many events, including those involving the Secretary of War, Deputy Secretary of War, or visiting high-level U.S. government officials or

foreign dignitaries, require additional security screenings to which PFAC holders would be subject.

Every individual exiting the building, regardless of status (e.g., military Service member, civilian employee, member of the news media), is subject to random checks of personal belongings.

A property pass is required to remove property from the building that is not readily identifiable as personal. When you or other members of your organization (e.g., technicians, photographers) remove equipment owned by your organization, obtain a property pass in advance to avoid problems when exiting the building. Property passes may be obtained in the Pentagon Press Operations (PPO) office, room 2D961, during normal working hours.

PFAC Security

Maintaining the security of your PFAC is an individual responsibility.

PFACs must be visible and always worn above the waist while in the Pentagon, except as noted below during press or other recorded events. Remove or hide your PFAC from view when not in the Pentagon.

Exceptions for press and other events: Do not have your PFAC visible in the following circumstances: when present during an on-camera press briefing; when doing a live-shot in the Pentagon Briefing Room or stand-ups at the Mall Entrance, River Parade Field, or on the Connector Parking Lot hill; when covering honor cordon arrival ceremonies; if on-camera during an open press event on the Pentagon Reservation; or at any other events that will be recorded via photograph or video. For those with a recording studio in the Pentagon, do not have your PFAC visible when recording in your studio.

Lost PFACs should be immediately reported to PPO at (703) 697-5131, or, after normal working hours, to (703) 678-6162 or to OSD.PA.DutyOfficer@mail.mil. Normal working hours for PPO on non-holiday weekdays are 7:30 a.m. to 6 p.m. Eastern Time.

Additional Press Identifier Badge

The Additional Press Identifier Badge (APIB) (see Appendix B) must also be visible and always worn above the waist while in the Pentagon. Note that APIBs serve only as an additional visual identifier. APIBs are not credentials and do not confer credentialing or attendance approval for any event.

News Media Physical Security Restrictions on the Pentagon Reservation

Effective May 23, 2025, in accordance with Secretary of War Memorandum, "Updated Physical Control Measures for Press/Media Access within the Pentagon," May 23, 2025

(Appendix C), new physical security restrictions have been enacted for news media, including those with valid, current PFACs:

- News media are not authorized to be anywhere on the 5th Floor, 4th Floor, 3rd Floor, Basement, or Mezzanine levels, including all corridors and rings, at any time without an escort from an authorized DoW official.
- On the 2nd Floor, news media are authorized unescorted access in the Pentagon for the below areas. For all other areas of the 2nd Floor not included below, except as otherwise addressed in this in-brief, news media must have an escort from authorized DoW personnel:
  - o Rings A through E between Corridors 1, 10 and 9 (from the Metro Entrance on the E Ring through the Concourse to the A Ring);
  - o E Ring from the Metro Entrance to Corridor 9;
  - o E Ring from the River Entrance directly to Corridor 9;
  - o Corridor 9 from the E Ring to the A Ring; 951-999
  - o At the Apex of Corridors 9/10, the exit to the Courtyard;
  - o A Ring from the Apex of Corridors 9/10 to the Mall Corridor between Corridor 6 and 7 and the Mall Corridor to the Mall Entrance for the purpose getting to and from the Mall Entrance for stand-ups
- On the 1st Floor, news media are authorized unescorted access to the Center Courtyard and the Food Court between Corridors 1 and 10.
- See Appendix D for a graphic of the areas where the news media are authorized unescorted access.
- News media are not authorized access to the Pentagon Athletic Center.

If news media require access to other areas or offices within the Pentagon for in-person interviews or other engagements, they must be escorted to and from those spaces by authorized DoW personnel.

As a non-government employee, while a PFAC is your authorized means of entering the Pentagon, a PFAC does not allow you unfettered access to all of the Pentagon. You have been briefed on the physical control measures for news media access and understand which areas require escort even though you have a PFAC. When in an area requiring an escort, you must remain with your escort at all times.

The list of authorized areas is expected to be modified within the next three months, as DoW intends to upgrade the space used by PFAC holders to a different area that provides WiFi access and cell phone service, as well as increased space for the expanded press corps.

<u>Public Release of DoW Information and the Protection of Classified National Security Information and Controlled Unclassified Information</u>

DoW remains committed to transparency to promote accountability and public trust. However, DoW information must be approved for public release by an appropriate authorizing official before it is released by any military member, DoW civilian employee or contract employee, even if it is unclassified. The Department of War must safeguard

classified national security information (CNSI), in accordance with Executive Order 13526 and the Atomic Energy Act, and information designated as controlled unclassified information (CUI), in accordance with Executive Order 13556. CUI may include, but is not limited to, information protected by the Privacy Act, information that is law enforcement-sensitive, and certain operational security information. Beyond CNSI and CUI, additional authorities may restrict the disclosure of certain information. Given the complexities of the various laws and policies concerning disclosure of information, DoW employees are required to have all information cleared for release by an appropriate authorizing official.

Military members, in particular, face potentially severe consequences for disclosing non-public information without proper authorization. Article 92 of the Uniform Code of Military Justice imposes criminal liability on military members who violate a lawful order or regulation.

Both military members and DoW civilian employees also face potential criminal liability under 18 U.S.C. §1905 for disclosure of confidential information or under the Privacy Act, 5 U.S.C. §552a, for knowing and willful unauthorized disclosures.

Only authorized persons who have received favorable determinations of eligibility for access, signed approved non-disclosure agreements, and have a need-to-know may be granted access to CNSI. DoW may only provide CUI to individuals when there is a lawful governmental purpose for doing so.

To be clear, these are the laws and regulations that apply to military members and DoW civilian employees and contractors. Members of the news media are not required to submit their writings to DoW for approval. However, they should understand that DoW personnel may face adverse consequences for unauthorized disclosures (see, e.g., Uniform Code of Military Justice Article 92 (10 U.S.C. 892); 18 U.S.C. 1905; 5 U.S.C. 552a(i)). Any solicitation of DoW personnel to commit criminal acts would not be considered protected activity under the 1st Amendment.

Unauthorized disclosure of CNSI or CUI poses a security risk that could damage the national security of the United States and place DoW personnel in jeopardy. To ensure the safety of U.S. personnel, news media who find themselves in possession of information that appears to be CNSI or CUI should discuss those materials with the PPO prior to publication.

Escort Privileges and Procedures

A PFAC authorizes media members who are U.S. citizens to access the Pentagon 24 hours a day and affords escort privileges for up to three visiting media members from the same media outlet who possess appropriate media credentials.

Visiting media members must be entered into the PFPA Visitor Management System (VMS) by the sponsoring U.S. public affairs office no later than one business day in

advance for U.S. citizens and no later than three business days in advance for non-U.S. citizens.

A PFAC also affords escort privileges for media members who are U.S. citizens for up to three visiting family members for special events, such as the Bring Your Child to Work Day, subject to the approval of the Office of the Assistant to the Secretary of War for Public Affairs (OATSW(PA)).  Family members 18 years and older must be entered into the PFPA Visitor Management System (VMS) by the sponsoring public affairs office no later than 24 hours in advance for U.S. citizens and no later than 48 hours in advance for non-U.S. citizens.

PFAC holders escorting other media members or family members must stay with their visitor(s) at all times.  Failure to do so may result in loss of the PFAC issued to you.

PFAC holders who are not U.S. citizens do not have escort privileges.

<u>PFAC Issuance and Renewals</u>

PFACs may be issued to those media members who require regular access to the Pentagon, who are accessing the building at a minimum monthly visit frequency.  See PPO for the current minimum monthly visit frequency.  You must continue to meet the minimum access frequency requirement to be reissued a PFAC. There are two probationary periods for an initial PFAC issuance.

An initial PFAC expires in three months, on the last day of the third month.  You may submit a request for renewal at the beginning of the month of expiration.  Media members who have met the minimum monthly visit frequency requirements during the initial three-month probationary period and who have not posed a security or safety risk to DoW personnel or property will generally be approved for a six-month badge.

The second probationary period is for six months. Requests for renewals of a six-month PFAC may be submitted at the beginning of the month of expiration.  Media members who have met the minimum monthly visit frequency requirements during the six-month probationary period and who have not posed a security or safety risk to DoW personnel or property during both the initial three-month and subsequent six-month probationary periods, will generally be approved for a one-year PFAC.

If the two probationary periods have been completed successfully and all requirements have been met, PFACs will be renewed annually.  During annual renewal reviews, if frequency requirements have not been met, PFAC renewals may be denied or revert to 3- or 6-month PFACs.

For all renewals, PFACs expire on the last day of the month of expiration. Renewal requests should be submitted at the beginning of the month of expiration, but not before the start of the month of expiration. Requests received prior to the start of the month will not be processed until the first business day of the month. Due to processing times,

renewal requests should be submitted to PPO no later than the middle of the month of expiration to ensure a new badge is available before the old one expires.

Frequency requirements may be waived by OATSW(PA) for a news organization's equipment technicians and some camera crews, if specifically identified and requested by the bureau chief. For first-time applications, equipment technicians and camera crews must still go through the two probationary periods.

PFACs may be denied, revoked, or not renewed if a person is reasonably determined to pose a security or safety risk to DoW personnel or property, or is not meeting the frequency requirements. An initial determination of a security or safety risk may result in an immediate suspension of Pentagon access during the process for making a final determination. A determination that an individual poses a security risk may be based on the unauthorized access, attempted unauthorized access, or unauthorized disclosure of CNSI or CUI. See Appendix A for information on the applicable standard and the process for denying, revoking, or non-renewing a PFAC.

<u>Press Parking</u>

Parking on the Pentagon Reservation is restricted to vehicles with permanent parking permits, or which have been cleared for temporary parking for specific days. Vehicles may only be parked in the areas for which they have been cleared.

There is a designated parking area for the news media at the Pentagon. The parking spaces in two lanes of the Connector Lot, located at intersection of Connector Road and Boundary Channel Drive, have been reserved for the press (see Appendix E). These parking spaces are clearly marked with "PRESS" stenciled on the ground.

To access the building, for those with a PFAC, walk north towards Boundary Drive and go up either the stairs or the ramp to the pedestrian bridge. At the security checkpoint, swipe your badge and then show it to the PFPA officer on duty. See the route depicted at Appendix E. The checkpoint opens at 6:00 a.m. and closes at 8:00 p.m. on weekdays. The checkpoint is closed on weekends and federal holidays. All visiting press must go through the Visitor Center at the Pentagon Metro Entrance.

There are a limited number of permanent "P" parking permits for news media members. Those who have such permits may park in designated PRESS spaces with their approved "P" parking permit at any time. News media members with "P" permit are not authorized to park elsewhere on the Pentagon Reservation, except when provided specific guidance to do so for special circumstances (e.g., when the Connector Lot is being re-surfaced, or closed for a special event). For such instances, PPO will provide information on where you may park.

News media members desiring to be issued a "P" parking pass should contact PPO; there is usually a waiting list for available permit.

News media without a "P" parking permit may also park in the PRESS area provided they obtain an approved temporary parking clearance prior to their arrival at the Pentagon. News media should contact the PPO Admin Support Team at 703-697-5131 at least 30 minutes prior to their arrival to request temporary parking clearance, and must provide the PPO with the following information: date requesting to park if not the day of the call, driver's name, email, phone number, media outlet, vehicle make, vehicle model, vehicle color, license plate number, state of registration, vehicle classification (car/truck/motorcycle/etc.), fuel type (gas/diesel/hybrid/electric), and whether it is a personal vehicle or a business vehicle. For repeat visits using the same vehicle, press need only provide date, name, and vehicle license plate. For parking on weekends, call the PPO Duty Officer at 703-678-6162.

News media may request temporary parking clearance for up to 5 days per month. Press can request an exception from the PPO for more days only on a case-by-case basis.

Overnight parking at the Pentagon is not permitted for members of the news media. Overnight parking is considered parking for more than 24 hours at a time.

If you are issued a "P" parking permit, you will be required to return it to the PPO upon completion of your media/press duties, or upon the expiration of the "P" parking permit.

Access on Weekends
If news media need to access the Pentagon on weekends, holidays, or when the pedestrian bridge between the Connector Lot and River Entrance is closed, news media may park in the press parking area and walk along Connector Road to River Road, go through a pedestrian turnstile, and continue walking up the River Road to Mug Handle to get to the River Entrance, which is open 24/7. See Appendix E for a depiction of the route. Note that those without a "P" parking permit must still provide their vehicle information to the PPO Duty Officer at 703-678-6162.

Mall Entrance Temporary Parking
News media crews that are doing a stand-up at the Mall Entrance location may request Mall parking. Mall Entrance parking is by reservation only. News media should contact the PPO Support Team at 703-697-5131 at least two hours prior to their arrival to request Mall Entrance parking clearance and must provide the same information as for regular press parking (see above) with the addition of time and arrival. Note that due to demand, there may be times when parking in the Mall Entrance lot is restricted to four hours per day. Visiting press who need to be at the Pentagon all day should park either in regular press parking or at the Mall Entrance. Parking at the Mall Entrance is by numbered spaces; PPO will provide the numbered parking space for each vehicle when Mall Entrance Parking is requested.

Filming/Photography

Filming, photography, and audio recording on the Pentagon Reservation is prohibited, unless approved in advance. In accordance with 32 CFR § 234.15 — Use of visual recording devices:

(a) The use of cameras or other visual recording devices on the Pentagon Reservation is prohibited, unless the use of such items are approved by the Pentagon Force Protection Agency, the Installation Commander, or the Office of the Assistant to the Secretary of War for Public Affairs.

(b) It shall be unlawful to make any photograph, sketch, picture, drawing, map or graphical representation of the Pentagon Reservation without first obtaining permission of the Pentagon Force Protection Agency or the Office of the Assistant to the Secretary of War for Public Affairs.

Note that this prohibition applies to the use of apps on mobile devices that utilize the front-facing camera lens, such as "FaceTime" or the taking of "selfies."

News media visiting the National Pentagon 9/11 Memorial in their personal capacity, not as a member of the press, may take photos using their personal devices. Filming or photography in the Memorial for a news media interview or to obtain b-roll requires an exception, as described below under Filming/Photography Exception Requests.

Filming/Photography Pre-Approved Exceptions
News media do not need to obtain permission in advance for filming, photography, or audio recording in the following circumstances:
- Press events in the Pentagon Briefing Room.
- Press events announced by OATSW(PA), the public affairs office for the Office of the Chairman of the Joint Chiefs of Staff, or the public affairs offices of the Military Departments or Headquarters, U.S. Marine Corps, that are not located in the Pentagon Briefing Room. Examples would include honor cordons and events at the Pentagon River Terrace Parade Field, the Pentagon Auditorium, and the Pentagon Center Courtyard.
- Unilateral news media stand-ups in the Pentagon Briefing Room, if approved, at the designated stand-up location outside the Mall Entrance, or live or recorded shots inside the network studio rooms in the Correspondent's Corridor.
- Recording audio of off-camera interviews approved and monitored by authorized DoW public affairs personnel.

Filming/Photography Exception Requests

The filming/photography exception requests discussed below require public affairs escort from either OATSW(PA) or the sponsoring public affairs office, regardless of whether the news media involved have a current PFAC or are visiting press.

- News media desiring to obtain b-roll or stock footage or photos of the Pentagon interior or exterior must submit a request to PPO a minimum of one week in advance

to obtain permission.  If this request is in conjunction with a press event sponsored by a public affairs office other than OATSW(PA), submit the request through the sponsoring public affairs office.  Requests should include date and times and either the exact location or sufficient information for the public affairs office to determine the best available locations for the footage or photos.

- News media desiring to film DoW officials standing or walking in a corridor in conjunction with an interview must submit a request through the sponsoring public affairs office to PPO a minimum of one week in advance to obtain permission. Request must include date, time, and exact location.

- News media desiring to photograph DoW officials in their offices or conference rooms in conjunction with an interview must submit their request through the sponsoring public affairs office to the security manager for that space.

- News media desiring to obtain b-roll or interview or film anyone inside the National Pentagon 9/11 Memorial must submit a DD Form 2798, "Application/Permit for Use of Space on the Pentagon Reservation," at least one week in advance to the Pentagon Facility Operations Division Special Events Office at whs.pentagon.fsd.mbx.pbmo-special-events@mail.mil.  You can download a DD Form 2798 here: https://www.esd.whs.mil/Directives/forms/dd2500_2999/DD2798/

Filming/Photography from the Press Parking Area

News media desiring to do a stand-up or film from the grassy hill next to the press parking area (see Appendix E) should submit a request to PPO no later than three hours in advance.  Requests should include the date, time, and the number of personnel in the crew.  Once approved, filming from the grassy hill does not require public affairs escort.

Pandemics, National Health Emergencies, and Other Contingencies

During a declared pandemic or national health emergency, the DoW will protect the workforce while continuing to perform its national security mission.  Protecting the workforce may entail the adoption of personal protective measures, restrictions on access to the Pentagon for essential functions only, symptom screenings, or other measures.

In the event of a declared pandemic or national health emergency, news media entering the Pentagon are expected to follow the same personal protective measures as DoW personnel and as required by Health Protection Condition (HPCON) announcements. Failure or refusal to comply may result in a loss of access, ranging from temporary suspension to revocation of PFACs.

Additionally, news media are not considered essential personnel.  During a declared pandemic or national health emergency, news media may temporarily be denied physical access to the Pentagon.

During other general emergency contingencies (e.g., fires, active shooters, natural disasters, utility outages), news media physical access to the Pentagon may be temporarily curtailed or denied.

<u>Security Risks</u>

A PFAC may be denied, revoked, or not renewed if a person is reasonably determined to pose a security or safety risk to DoW personnel or property, in accordance with the standards and procedures outlined in Appendix A. Such an initial determination may result in an immediate suspension of your Pentagon access while the procedures preceding a final determination are pending.

This in-brief and its Appendices address DoW policy and the potential bases for such a determination and do not prohibit you as a PFAC holder from engaging in constitutionally protected journalistic activities, such as investigating, reporting, or publishing stories.

Such determination may be based on factors including, but not limited to, the unauthorized access, attempted unauthorized access, or unauthorized disclosure of CNSI or CUI, convictions for national defense offenses, threats, or unsafe activities (as listed in Appendix A). Such a determination is based on a reasonable assessment informed by the unique facts and circumstances of each case--such as whether the conduct is willful or repeated, versus isolated and unintentional—and incorporates due process (e.g., written notice of the basis, a 30-day appeal period, an opportunity for personal appearance, and a final, reviewable determination).

For clarity, the receipt of unsolicited CNSI or CUI and its subsequent publication is generally protected by the First Amendment and would not, on its own, normally trigger denial, revocation, or non-renewal of a PFAC. However, if you solicit the disclosure of such information or otherwise encourage DoW personnel to violate laws and policies concerning the disclosure of such information, such conduct may weigh in the consideration of whether you pose a security or safety risk.

There is a critical distinction between lawfully requesting information from the government and actively soliciting or encouraging government employees to break the law.  The First Amendment does not permit journalists to solicit government employees to violate the law by providing confidential government information. The press's rights are not absolute and do not override the government's compelling interest in maintaining the confidentiality of sensitive information. Soliciting or encouraging government employees to break the law falls outside the scope of protected newsgathering activities.

Solicitation may include direct communications with specific DoW personnel or general appeals, such as public advertisements or calls for tips encouraging DoW employees to share non-public DoW information. For example, an advertisement or social media post by an individual journalist or media outlet that directly targets DoW personnel to disclose

non-public information without proper authorization would constitute a solicitation that could lead to revocation.

Additionally, publication that recklessly endangers American lives could factor into an assessment of whether continued unescorted access to the Pentagon poses a security risk.

All determinations under this policy are undertaken on a case-by-case basis reviewing the totality of the circumstances to ensure the policy is narrowly tailored to safeguard sensitive information without unduly restricting speech and are informed by factors such as convictions for national defense offenses, threats, or unsafe activities (as listed in Appendix A). Moreover, determinations will take into account whether such conduct is willful or repeated, as opposed to isolated and unintentional.

No Waiver of Rights

Nothing in this document requires you to waive any constitutional rights. This in-brief constitutes a description of DoW policies.

**PRIVACY ACT STATEMENT**

**AUTHORITY:** 10 U.S.C. 113, Secretary of Defense; 42 U.S.C. Chapter 23, Development and Control of Atomic Energy; Executive Order 13526, Classified National Security Information; Executive Order 13556, Controlled Unclassified Information; 32 C.F.R. Part 234, Conduct on the Pentagon Reservation; DoD Directive 5122.05, Assistant to the Secretary of Defense for Public Affairs (ATSD(PA)).
**PRINCIPAL PURPOSE:** To inform members of the news media being granted access to the Pentagon Reservation and issued a Pentagon Alternative Facilities Alternative Credential (PFAC) of the rules regarding conduct on the Pentagon Reservation and the rules and procedures concerning termination of such access.
**ROUTINE USE(S):** In certain circumstances, it may be necessary to disclose this record outside of the Department of Defense. For example, this record may be disclosed to a component of the Department of Justice for the purpose of representing the Department of Defense, or its components, officers, employees, or members in pending or potential litigation to which the record is pertinent; or to an appropriate law enforcement authority when the record, either alone or in conjunction with other information, indicates a violation or potential violation of law, whether criminal, civil, or regulatory in nature. For a complete list of routine uses, refer to the applicable system of records notice: DPAD 12.0, DoD Media Pool and Pentagon Correspondent Files, at
https://www.federalregister.gov/documents/2021/05/03/2021-09211/privacy-act-of-1974-system-of-records
**DISCLOSURE:** Voluntary; however, failure to complete this acknowledgement may result in limiting DoD's ability to grant access to the Pentagon Reservation.

NAME: _____     DATE: _____

<u>Acknowledgement</u>

I have received, read, and understand the "Pentagon Reservation In-brief for Media Members," with Appendices A-E, including Appendix A, which addresses the standard and procedures for denying, revoking, or not renewing a PFAC. The in-brief describes DoW policies and procedures. My signature represents my acknowledgement and understanding of such DoW policies and procedures, even if I do not necessarily agree with such policies and procedures. Signing this acknowledgment does not waive any rights I may have under law.

_____     _____
Signature -- Administering Official     Signature -- Media Member

New Badge Expiration Date_____

Email address_____

Work phone_____ Cell phone_____

12

**APPENDIX A:** DENIAL, REVOCATION, OR NON-RENEWAL OF PENTAGON FACILITY ALTERNATIVE CREDENTIALS.

A. Reason for Denial, Revocation, or Non-Renewal. The Director, PFPA, or designee, shall deny, revoke, or refuse to renew the PFAC of any person reasonably determined to pose a security or safety risk to DoW personnel or property. Persons presumed to present such a risk include, but are not limited to, those who have been convicted of any offense involving:

(1) National defense (such as treason, sabotage, terrorism, or espionage).

(2) The use, attempted use, or threatened use of physical force against another person (such as murder, manslaughter, assault, rape, robbery, or kidnapping) or conduct that presents a serious potential risk of physical injury to another (such as arson, burglary, or the unlawful possession of explosives or firearms).

(3) Unlawful manufacturing or distribution of drugs.

(4) Threatening or harassing communications.

(5) Theft, embezzlement, trespassing, or property destruction.

(6) Fraud or deceit.

(7) Prostitution or other prohibited sexual conduct.

(8) Engaging in operations and activities that are unsafe, fail to abate an identified hazard, endanger others, or create a condition immediately dangerous to life health.

(9) Unprofessional conduct that might serve to disrupt Pentagon operations.

Additionally, actions other than conviction may be deemed to pose a security or safety risk, such as discussed in the Pentagon Reservation In-Brief for Media Members

B. Procedures for Denial, Revocation, or Non-Renewal. If the Director, PFPA, or designee, anticipates that a PFAC might be denied, revoked, or not renewed, the applicant or his or her authorizing official shall be notified in writing by the Director, PFPA, or designee, of the basis for the proposed denial, in as much detail as security considerations permit. When an individual's PFAC has been denied, revoked, not renewed, or suspended for the reasons outlined above, both unescorted and escorted access to any DoW facility is terminated. This section does not apply to journalists who decide not to renew for reasons unrelated to any security or safety risk, such as a change in employment or assignment.

(1) The notification of proposed denial, revocation, or non-renewal shall inform the applicant of the right to respond to and rebut any factual basis supporting the proposed denial, revocation, or non-renewal.

(2) The applicant will be allowed 30 days from the mailing date of the proposed denial, revocation, or non-renewal notification to make an appeal appointment with the Director, Pentagon Access Control Branch (PACB).

(3) If the applicant or representative is unable to schedule an appointment within 30 days, an extension for one additional 30-day period will be granted on receipt of a telephone request to PACB for such an extension.

(4) If mitigating information is presented at the appointment to substantiate a reversal of denial, revocation, or non-renewal, the applicant may receive a DoW Building Pass at that time.

(5) If no mitigating information is presented or if information is presented but is insufficient to substantiate the issuance of a DoW Building Pass, the applicant will be allowed 30 days from the appeal appointment to respond in writing to the Director, PFPA, or designee. The response will consist of any explanation or rebuttal considered appropriate by the applicant and must be signed by the applicant or representative under oath or affirmation.

(6) At the time of the filing of the written response to the notification of the proposed denial, revocation, or non-renewal, the applicant or representative may request, and shall normally be granted, the opportunity to make a personal appearance before the Director, PFPA, or designee, to personally support his or her eligibility for a pass and to rebut or explain the factual basis for the proposed denial. The Director, PFPA, or designee, shall exercise final review authority in the matter.

(7) On the basis of the written or oral response to the proposed denial, revocation, or non-renewal, the Director, PFPA, or designee, shall determine whether further inquiry or investigation on the issues raised is necessary.

(a) If a decision is made that no such inquiry is necessary, a final decision shall be issued.

(b) If a decision is made that further inquiry is necessary, the Director, PFPA, or designee, shall conduct such inquiry as deemed appropriate.

(8) Upon receipt of the applicant's written or oral response explaining or rebutting the factual basis for the proposed denial, revocation, or non-renewal, and upon completion of any additional inquiry, a final decision shall be expeditiously made by the Director, PFPA, or designee. If a final adverse decision is reached, the applicant shall be notified of the final decision in writing. The notification shall state, as precisely as security considerations permit, the factual basis for the denial.

(9) The decision of the Director, PFPA, or designee, under this section shall constitute a final agency decision. This section does not confer any rights on any individual or entity and is intended only as internal guidance for the administration of the Department of War.

# Appendix B

## Additional Press Identifier Badge

BACK



FRONT





**SECRETARY OF DEFENSE**
1000 DEFENSE PENTAGON
WASHINGTON, DC 20301-1000

MAY 2 3 2025

MEMORANDUM FOR RESIDENT AND VISITING PRESS ASSIGNED TO THE
                            PENTAGON

SUBJECT: Updated Physical Control Measures for Press/Media Access Within the Pentagon

References: (a) DoDM 5200.01, "Volume 3, DoD Information Security Program:
                    Protection of Classified Information," February 24, 2012
                    (b) Office of Secretary of Defense, Chief of Staff Memorandum: "Efforts to
                    Combat Unauthorized Disclosures," March 21, 2025

      The Department of Defense's (DoD) highest priority is the defense of our Nation and our
national security.   Per reference (a), the protection of classified national intelligence
information (CNSI) and sensitive, unclassified information, including information deemed
critical to operations security (OPSEC), remains an unwavering imperative for the Department.
Per reference (b), the Chief of Staff to the Secretary of Defense recently directed an
investigation into unauthorized disclosures.

      While the Department remains committed to transparency, the Department is equally
obligated to protect CNSI and sensitive information — the unauthorized disclosure of which
could put the lives of U.S. Service members in danger.  To attain professional balance between
press access and OPSEC, the following updated security measures for resident and visiting press
are needed to reduce the opportunities for in-person inadvertent and unauthorized disclosures.

      Effective immediately, the Secretary of Defense directs the following control measures
for all resident and visiting press who have been issued a Pentagon Facilities Alternate
Credential (PFAC) for the Pentagon:

   1.  Press/media are not authorized entry/access to the Secretary of Defense physical
       office spaces located on the 3rd floor, ring E, between corridors 9 and 8 without an
       official approval and escort from the Office of the Assistant to the Secretary of
       Defense for Public Affairs (OATSD(PA)).

   2.  Press/media are not authorized entry/access to the Joint Staff physical office spaces
       located on the 2nd floor between corridors 9 and 7, rings A through E, without
       official approval from the Office of the Secretary of Defense for Public Affairs
       (OSD(PA)) and escort by personnel from the Joint Staff Public Affairs Office.

   3.  Press/media are only authorized unescorted access in the Pentagon on rings A
       through E on the 2nd floor of the Pentagon between the "Metro Entrance" at
       corridors 1 and 10 and the "River Entrance" at corridors 8 and 9 via and to the
       Pentagon Courtyard and Food Court (located between corridor 1 and 10 on the 1st
       Floor).  The exception is noted in paragraph 2 (above).

   4.  If press require access to other areas/offices within the Pentagon for "in-person"



OSD005511-25/CMD007129-25

# Pentagon
## 2nd Floor

# Appendix D

Yellow areas indicate areas where press are allowed without escort.



**Pentagon**
**1st Floor**

**Appendix D**
Yellow areas indicate areas
where press are allowed without
escort.

**Appendix E**

Legend:
- ⬭ (blue) Personnel access control point on pedestrian bridge
- ┆ (blue dashed) Weekday route to River Entrance
- ⬭ (green) Personnel turnstile at vehicle access control point
- ▭ (red) Press parking
- ⋮ (green dotted) Weekend route to River Entrance

River Entrance