# EXHIBIT C



**ASSISTANT TO THE SECRETARY OF WAR**
1400 DEFENSE PENTAGON
WASHINGTON, D.C. 20301-1400

**PUBLIC AFFAIRS**

September 24, 2025

Reporters Committee for Freedom of the Press
PO Box 34176
Washington, DC 20043

Attn: Bruce D. Brown, President

*Re: Implementation of New Media In-Brief*

Dear Mr. Brown:

    We are in receipt of the Reporters Committee for Freedom of the Press' letter dated September 22, 2025, regarding the new in-brief form for journalists holding a Pentagon Facilities Alternate Credential (PFAC). We appreciate the Reporters Committee for Freedom of the Press engaging directly on this matter and value your role in advocating for journalists and news organizations. Your input helps ensure that our policies support both national security and a free press, and we are committed to addressing your concerns with clarity and transparency.

    The in-brief form outlines Department of War (DoW) information security requirements, physical control measures, and expectations for compliance with safety and security protocols. It does not impose restrictions on journalistic activities, such as investigating, reporting, or publishing stories—rights unequivocally protected by the First Amendment. Instead, it informs PFAC holders of DoW's internal policies and the processes for managing building access, which is a privilege extended to facilitate responsible coverage, not a right to unfettered entry and access. To address your illustrative concerns, I will respond to each in turn, quoting directly from the in-brief form and related documents where relevant.

    First, regarding the section entitled "Public Release of DoW Information and the Protection of Classified National Security Information and Controlled Unclassified Information," this language describes policies governing DoW personnel and does not purport to create obligations for reporters holding a PFAC. As stated in the in-brief:

> DoW remains committed to transparency to promote accountability and public trust. However, DoW information must be approved for public release by an appropriate authorizing official before it is released, even if it is unclassified. The Department of War must safeguard classified national security information (CNSI), in accordance with Executive Order 13526 and the Atomic Energy Act, and information designated as controlled unclassified information (CUI), in accordance with Executive Order 13556.

> Only authorized persons who have received favorable determinations of eligibility for access, signed approved non-disclosure agreements, and have a need-to-know may be granted access to CNSI. DoW may only provide CUI to individuals when there is a lawful governmental purpose for doing so.
>
> Unauthorized disclosure of CNSI or CUI poses a security risk that could damage the national security of the United States and place DoW personnel in jeopardy.

This section outlines the responsibilities of DoW servicemembers and civilian employees under established DoW Instructions, such as DoD Instruction 5230.09 ("Clearance of DoD Information for Public Release") and DoD Instruction 5230.29 ("Security and Policy Review of DoD Information for Public Release"), which mandate pre-publication reviews through official channels to prevent unauthorized disclosures by government personnel. It does not require reporters to seek DoW approval for their stories or endorse any viewpoint on pre-authorization. Journalists remain free to gather information through legitimate means, such as Freedom of Information Act requests, official briefings, or unsolicited tips, and to publish as they deem newsworthy. The focus is on preventing active solicitation that encourages DoW personnel to violate these disclosure rules, as such conduct is not always protected by the First Amendment.

Second, the series of "Acknowledgments" on page nine of the in-brief, which PFAC holders must "agree to abide by," are intended as acknowledgments of DoW's policies and potential grounds for discretionary action, not as commitments by reporters to refrain from newsgathering or disclosure. Specifically, the acknowledgment at issue states:

> I acknowledge that such a determination [that a person poses a security or safety risk] may be based on the unauthorized access, attempted unauthorized access, or unauthorized disclosure of CNSI or CUI.

This is the latter interpretation you describe: an acknowledgment of DoW's policy, not a pledge by the PFAC holder to avoid such actions. It informs credential holders of the potential bases for a reasonable determination of risk, ensuring transparency about the process. Receipt of unsolicited information and subsequent publication—even of CNSI or CUI—is generally constitutionally protected and would not normally, on its own, trigger revocation. However, in rare, extreme cases where publication recklessly endangers American lives, it could factor into an assessment of whether continued unescorted access to the Pentagon poses a security risk. Moreover, if a reporter solicits the gathering and providing of such information for use in the reporter's work or is otherwise aware of and encourages the actions, such actions may also weigh in this consideration. This aligns with First Amendment precedent, including that which holds that the First Amendment does not immunize conduct facilitating legal violations, while preserving broad protections for publication.

Finally, the in-brief does not mandate ("shall") that a PFAC holder's disclosure of CNSI or CUI result in denial or revocation; rather, it "may" do so in the Department's discretion, based on a reasonable determination of security or safety risk as informed by the unique facts and circumstances of each application. As detailed in Appendix A to the in-brief:

> The Director, PFPA, or designee, shall deny, revoke, or refuse to renew the PFAC of any person reasonably determined to pose a security or safety risk to DoW personnel or property.

This determination is informed by factors such as convictions for national defense offenses, threats, or unsafe activities (listed in Appendix A). All decisions incorporate due process: written notice of the basis (as security permits), a 30-day appeal period, an opportunity for personal appearance, and a final, reviewable determination. This process ensures actions are narrowly tailored, not arbitrary, and support the government's compelling interest in safeguarding sensitive information without unduly restricting speech.

I trust that these clarifications address your concerns and confirm that the in-brief does not infringe upon First Amendment protections. As requested, we welcome a meeting with your organization's leadership to discuss these and other issues. Please have Mr. Rottman contact my office to coordinate a convenient time.

Sincerely,

Sean Parnell

CC:  Gabe Rottman, Vice President of Policy
     Susan Gough, Pentagon Press Operations