IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE NEW YORK TIMES COMPANY, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> DEPARTMENT OF DEFENSE, *et al.*, <br> *Defendants*. | Civil Case No. 25-cv-4218 <br><br> DECLARATION OF <br> RICHARD W. STEVENSON |

### DECLARATION OF RICHARD W. STEVENSON

I, Richard W. Stevenson, hereby declare as follows:

1. I am over the age of 18 and make this declaration based upon my personal knowledge and experience. I make this declaration in support of Plaintiffs' Motion for Summary Judgment. If called to do so, I could and would competently testify to these matters under oath.

2. I am an editor and Washington bureau chief with The New York Times ("The Times"). I have worked for The Times since 1985, and I have been primarily based in The Times Washington bureau since 1996.

3. As of November 2025, The Times had more than 12 million subscribers across all of its print and digital products, including news. Website traffic data consistently indicates that The Times' website receives more visits than the website of any other news organization in the United States.

4. As part of my responsibilities as the Times' Washington bureau chief, I oversee coverage of the federal government, including the Department of Defense (the "Department" or "Pentagon"). I manage the work of reporters at The Times, including reporters who cover the Pentagon and who held Pentagon Facility Alternate Credentials ("PFACs") as recently as October 2025.

1

5. Since I joined The Times in 1985 until October 2025, The Times has consistently had multiple reporters with PFACs who have regularly accessed the Pentagon in the course of their work. In my view, as an editor at The Times, the ability of Times reporters to access the Pentagon on a regular basis has enhanced the depth, detail, and quality of The Times' coverage of the Pentagon, the Department, the United States military, and national security issues. It has enabled Times reporters to speak face-to-face with Department officials, attend press conferences and briefings, ask questions of public affairs staff and Department leadership, develop relationships with Department personnel, and provide immediate, in-person coverage of events that occur at the Pentagon.

6. In my experience, Times reporters who cover the Pentagon and national security have consistently strived to be accurate, independent, probing, and fair in their coverage. One aspect of those reporters' job is to report on the official pronouncements of the Department and the information that Department leadership wants to convey to the public. But it is also important that those reporters seek information beyond what the Department deems to be in its interests to make public. And it is also important that reporters seek to contextualize, investigate, and fact-check the Department's official pronouncements, which includes gathering and reporting information that may contradict or cast doubt on Department leaders' statements, and to sometimes report information that Department leadership does not intend to make public at all. All of this reporting is integral to ensuring that the American public understands what its government and military are doing, and to ensuring that Department leaders are accountable for their actions and statements.

7. To my knowledge, no Times reporter has ever had their PFAC suspended, revoked, or not renewed because the Department concluded they posed a threat to the safety or security of Department personnel or property.

8. In May 2025, I learned that the Department was imposing new restrictions on reporters' physical access to parts of the Pentagon. These new restrictions impeded Times reporters' ability to access unsecure parts of the building that they had regularly visited in the past, and it reduced their face-to-face interaction with certain Department offices and personnel, including Public Affairs personnel. I am not aware of any security incident or other incident involving a PFAC holder that precipitated these new restrictions.

9. In September and October 2025, the Department announced new rules governing reporters' PFACs. I read the first version of this new PFAC policy shortly after it was announced in September, and read the final policy, as revised, when it was issued in early October. The new PFAC policy states that a reporter or news organization who sought out, acquired, or published information that Department officials had not approved—even if that information was not classified—could be deemed a "security or safety risk" and could lose their PFAC immediately, without warning. That meant that the Department could suspend or revoke a reporter's PFAC if that reporter or his or her news outlet gathered or published information that the Department viewed as unflattering or critical of it or its leadership. I viewed this policy to be intolerable and inconsistent with The Times' journalistic standards and practices.

10. Under the new PFAC policy, reporters with PFACs were required to either sign an "Acknowledgment" confirming that they "acknowledge[d]" and "underst[ood]" the new policy and its provisions by October 15, 2025, or else their PFACs would be revoked. I did not believe at the time, and do not believe now, that Times reporters can fulfill the ethical and professional responsibilities of their jobs—which include an obligation to seek out and report the truth, regardless of whether it is convenient or inconvenient for those in positions of power—while also acknowledging a policy that restricts their rights to gather and report information the Department

has not formally approved by granting Department officials the unlimited power to immediately suspend or revoke those reporters' PFACs.

11.     Ultimately, all seven Times reporters who held PFACs as of August 2025, Eric Schmitt, Helene Cooper, Greg Jaffe, John Ismay, Carol Rosenberg, Julian Barnes, and Bill Hennigan, decided not to sign the Acknowledgment and were compelled to surrender their PFACs as a result. Even though it is a significant detriment to The Times and its mission to no longer have reporters at the Pentagon regularly, I agreed with and support that decision. It is my understanding that, if not for the new PFAC policy and the Department's mandate that reporters sign the Acknowledgment to maintain their PFACs, reporters with The Times would have continued to hold PFACs and to regularly access the Pentagon for newsgathering and reporting.

12.     While the Pentagon permits non-PFAC holding members of the press to apply for a "day pass," it is not clear whether Times reporters whose PFACs were revoked because they refused to sign the Acknowledgment would be viewed as eligible for a day pass. In any event, applications for day passes must be submitted at least 48 hours in advance. At least two Times reporters have applied for day passes since October 15, 2025, and their applications were denied.

13.     Since on or around October 15, 2025, no Times reporter has held a PFAC. This has created an unprecedented and significant impediment to Times reporters' ability to cover the Pentagon, Department leadership, national security, and the United States military. For example, the Pentagon held a press conference in the Pentagon Press Briefing Room on December 2, 2025 that Times reporters were unable to attend because they no longer have PFACs. Because they were not present at that press conference, Times reporters did not have an opportunity to ask questions of the Pentagon Press Secretary that would be relevant to their reporting. Times reporters are also unable to have face-to-face interactions with Department officials and personnel without a

prearranged meeting away from the Pentagon, which is more difficult and time-consuming to arrange. While The Times has continued to provide in-depth coverage of the Pentagon since October 15, 2025, that reporting has been made more difficult and burdensome because no Times reporter has a PFAC.

    I declare under penalty of perjury that the foregoing is true and correct.

Executed this 2 day of January 2026 in Chevy Chase, Maryland.

_____
Richard W. Stevenson