THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE NEW YORK TIMES COMPANY, *et al.* <br><br> *Plaintiffs*, <br><br> v. <br><br> DEPARTMENT OF DEFENSE A/K/A DEPARTMENT OF WAR, *et al.*, <br><br> *Defendants*. | Civil Case No. 25-cv-04218 (PLF) |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' "NOTICE OF CLARIFICATION"**

One week after oral argument, Defendants filed a purported "notice of clarification" that offers yet another version of what the Department's PFAC Policy means and how it will be applied. The only thing it further clarifies is that the Policy has no workable, meaningful standards and imposes no constraints, in violation of due process and the First Amendment.

After admitting at argument that the PFAC Policy is "more subjective" than objective, Oral Arg. Tr. 41, Defendants attempt to walk back that case-ending concession—but, unable to deny the Policy's grant of standardless discretion, they settle on the doublespeak that it is an "objective" standard that will be implemented "subjective[ly]." Dkt. 32 at 1. Even setting aside the incoherence of that explanation, Defendants' letter does not change what the Policy says: PFACs may be suspended, revoked, and denied under the very same impermissibly vague "national security" standard the D.C. Circuit found unconstitutional in *Sherrill v. Knight*, 569 F.2d 124, 130 (D.C. Cir. 1977). The Department again ignores that the "subjective" judgment *Sherrill* tolerated was the far narrower discretion to implement a circumscribed "physical security" standard. *Id.* And it ignores that the Policy's supposedly "enumerated, objective factors" are not constraints on the Department's discretion—both because the Department need not revoke the PFAC of someone who violates them, as in the cases of James O'Keefe and Laura Loomer, and because the

1

Department simultaneously reserves the discretion to exclude journalists who violate none of them. *See* AR 15.[1]

The Department's "clarification" about one of the Policy's supposedly "objective" factors—"solicitation"—is instead more proof of its subjectivity. After attempting to amend the Policy mid-argument to cover only requests that could implicate information protected by certain enumerated statutes, the Department again invents a new criterion that will purportedly guide its unbridled discretion: whether the reporter offers its sources anonymity. Tr. at 47–48. This is no fix for the Policy's unconstitutionality. Speaking with anonymous sources, as well as agreeing to speak to sources on background or off the record, is a "frequent[]" and "often essential" element of newsgathering. *Zerilli v. Smith*, 656 F.2d 705, 711 (D.C. Cir. 1981). Punishing reporters for that typical journalistic practice would not turn asking questions into actionable criminal solicitation and would violate the First Amendment. *See Counterman v. Colorado*, 600 U.S. 66, 76 (2023); *Brandenburg v. Ohio*, 395 U.S. 444, 447–49 (1969). That the Department pulls this new criterion out of thin air, a week after argument, only confirms it will be making the rules up as it goes, chilling reporting and depriving journalists of notice of how to conform to the Policy—a far cry from satisfying the particularly "stringent vagueness and fair-notice test" applicable here, *Karem v. Trump*, 960 F.3d 656, 665 (D.C. Cir. 2020) (alteration marks omitted)—and enabling ad hoc decision making. And it changes nothing that "[t]he Policy considers whether [a reporter's] actions are 'willful.'" Dkt. 32 at 2. The Department still does not identify any law criminalizing Department employees' speech to reporters on any "non-public information," *id.*, much less

---

[1] Indeed, just this week, the Pentagon excluded photojournalists from day passes because they published photos of Secretary Hegseth he thought unflattering. *See* Scott Nover, *Pentagon bars photographers over 'unflattering' Hegseth photos*, Wash. Post (Mar. 11, 2026), https://www.washingtonpost.com/business/2026/03/11/hegseth-press-briefings-photos-iran/.

criminalizing merely asking questions that might lead to such expression.  Reporters' constitutional protections require more than "consideration."

The Department's new submission says the quiet part out loud.  Its proposed safe harbor is that journalists can simply talk to the "Department personnel [that] are authorized to speak to the press."  Dkt. 32 at 1–2.  In other words, journalists' PFACs are safe so long as they repeat the official story, without asking whether there is another side to it.  Or, as Secretary Hegseth put it earlier this week, if they are, in his view, "patriotic press."[2]  That is exactly the viewpoint discrimination that renders the Policy unconstitutional, and it underlines why the Policy is an unreasonable restriction given the purpose of the nonpublic forum: to promote transparency.

The Department's submission confirms that the Policy is unlawful and must be vacated.

---

[2] *See* Ian Schwartz, *Hegseth Rips Media: A Patriotic Press Would Report "Iran Shrinking, Going Underground"*, RealClearPolitics (Mar. 13, 2026), https://www.realclearpolitics.com/video/2026/03/13/hegseth_rips_media_a_patriotic_press_would_report_iran_shrinking_going_underground.html.

March 13, 2026                                   Respectfully submitted,


                                                 */s/ Theodore J. Boutrous, Jr.*

                                                 Theodore J. Boutrous, Jr.
                                                 (D.D.C. Bar No. 420440)
                                                 Katie Townsend (D.D.C. Bar No. 1026115)
                                                 Gibson, Dunn & Crutcher LLP
                                                 333 South Grand Avenue
                                                 Los Angeles, CA 90071-3197
                                                 (213) 229-7000
                                                 TBoutrous@gibsondunn.com
                                                 KTownsend@gibsondunn.com

                                                 Gibson, Dunn & Crutcher LLP
                                                 Lee R. Crain (D.D.C Bar No. NY0337)
                                                 Gibson, Dunn & Crutcher LLP
                                                 200 Park Avenue
                                                 New York, NY 10166-0193
                                                 (212) 351-4000
                                                 LCrain@gibsondunn.com

                                                 Susan Pelletier*
                                                 Gibson, Dunn & Crutcher LLP
                                                 1700 M Street, N.W.
                                                 Washington, DC 20036-4504
                                                 (202) 955-8500
                                                 SPelletier@gibsondunn.com

                                                 **Pro hac vice*

                                                 *Counsel for Plaintiffs The New York Times Company and Julian E. Barnes*

## CERTIFICATE OF SERVICE

      I hereby certify that on March 13, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system, which will serve a copy of the same on the counsel of record.

      Respectfully submitted,

      */s/ Theodore J. Boutrous, Jr.*