# EXHIBIT 1



**ASSISTANT TO THE SECRETARY OF WAR**

1400 DEFENSE PENTAGON
WASHINGTON, D.C. 20301-1400

PUBLIC AFFAIRS

MEMORANDUM FOR SENIOR PENTAGON LEADERSHIP

SUBJECT: Implementation of Revised Media In-Brief

On March 20, 2026, the United States District Court for the District of Columbia vacated certain provisions of the October 6, 2025 PFAC Policy. *See New York Times Co. v. Department of Defense*, No. 25-04218 (D.D.C. Mar. 20, 2026). The Department disagrees with the Court's decision and is pursuing an appeal. In the interim, and without conceding the validity of the Court's analysis, the Department has revised the Policy to comply with the Court's order while preserving the Department's legitimate security interests and its statutory obligation to ensure the safe, efficient, and secure operation of the Pentagon Reservation. 10 U.S.C. § 2674.

The attached documents implement the revised "Pentagon Reservation In-Brief for Media Members," effective March 23, 2026. This memorandum and attachments supersede the "Implementation of New Media In-Brief," dated October 6, 2025.

**Revised Policy.** All members of the press issued a PFAC will receive a copy of the revised in-brief at the time their PFAC is issued or renewed. Receipt of the PFAC and the accompanying in-brief constitutes notice of the Policy's terms. The revised in-brief addresses the provisions the Court vacated while retaining all physical access restrictions, conduct requirements, and security measures that were not at issue in the litigation.

**Clarifications in Response to the Court's Decision.** The Court characterized the original Policy's provisions in ways the Department believes were inaccurate. The revised Policy includes targeted clarifications to correct these mischaracterizations. In particular:

- The Court stated that the Policy's use of the term "solicitation" was ambiguous because "to 'solicit' in the everyday sense means 'to approach (someone) with a request or plea'" and that "a charity requesting donations, a community organizer calling on volunteers, or a journalist asking questions is not a crime." *Id.*, slip op. at 21. The Department agrees that asking questions is not a crime. The original Policy never prohibited asking questions. To correct the Court's mischaracterization, the revised Policy replaces the term "solicitation" with "intentional inducement of unauthorized disclosure" and provides a specific definition tied to identified federal criminal statutes, with a knowledge requirement and six explicit safe harbors for routine newsgathering activities that were never covered by this provision.

- The Court stated that the Policy's "security or safety risk" standard was too vague. While the Department maintains that the original standard, read in context with its enumerated factors, provided adequate notice, the revised Policy replaces this standard with an exhaustive list of specific, enumerated grounds for denial, revocation, or non-renewal of a PFAC, with evidentiary standards consistent with those applied in security clearance

adjudications under Executive Order 12,968. No PFAC may be denied, revoked, or not renewed on grounds not enumerated in the revised Appendix A.

- The Court expressed concern about the absence of processing timelines. The revised Policy includes specific deadlines: 30 days for a final decision where no further inquiry is needed, and 60 days where further inquiry is required.

**Closure of Correspondents' Corridor and Relocation of Press Workspace.** As previously announced in the October 6, 2025 Policy, the Department committed to "upgrade the space used by PFAC holders to a different area that provides WiFi access and cell phone service, as well as increased space for the expanded press corps." The Department is now fulfilling that commitment. Effective immediately, the Correspondents' Corridor is closed. A new press workspace will be established in an annex facility outside the Pentagon and will be available when ready. The Department will notify PFAC holders when the new workspace is operational.

In the interim, PFAC holders will continue to have access to the Pentagon for scheduled press briefings, press conferences, and interviews arranged through public affairs offices. Access to the Pentagon for these events will require escort by authorized DoW personnel at all times. In breaking news situations, PFAC holders will be escorted into the Pentagon by authorized DoW personnel. The Pentagon Briefing Room remains in the Pentagon and will continue to be used for press events.

In assessing the Department's security posture following the Court's vacatur of the PFAC Policy's security screening provisions, the Department determined that unescorted access to the Pentagon cannot be responsibly maintained without the ability to screen PFAC holders for security risks. The revised Policy establishes new security screening standards in the revised Appendix A. Until those standards have been fully implemented and the new workspace is operational, all journalist access to the Pentagon will require escort.

**Notice of Policy.** The original Policy required PFAC holders to sign an Acknowledgement attesting to their receipt, reading, and understanding of the Policy. The Court vacated this requirement. The Department maintains that requiring journalists to acknowledge a constitutional policy is a reasonable administrative measure, and the Court's vacatur was based on its finding that the underlying provisions were constitutionally deficient — a finding the Department disputes and is appealing. Regardless, the revised Policy eliminates the signature requirement. Instead, each PFAC holder will receive a copy of the revised in-brief at the time their PFAC is issued or renewed, and will sign a receipt confirming that they have received their PFAC and a copy of the Policy. Receipt of the PFAC and the accompanying in-brief constitutes sufficient notice of the Policy's terms. No PFAC holder is required to agree with, endorse, or acknowledge understanding of the Policy as a condition of receiving or maintaining a PFAC.

I request your assistance in ensuring that all personnel in your Component are aware of the revised physical access measures, including the requirement to provide escorts for media entering the Pentagon for approved events. If personnel see any news media inside the Pentagon without an escort, they should direct them to the Pentagon Press Operations office and alert PPO at 703-697-5131.

My POC for this action is Sue Gough, Pentagon Press Operations, susan.l.gough.civ@mail.mil or 703-697-1254.

Sean Parnell

Attachments:
As stated

## PENTAGON RESERVATION IN-BRIEF FOR MEDIA MEMBERS

NAME:_____    DATE:_____

The purpose of this briefing is to inform you, as a member of the news media who has been granted access to the Pentagon Reservation and issued a Pentagon Facilities Alternative Credential (PFAC), also known as a Department of War Building Pass or a Pentagon badge, of the rules regarding conduct on the Pentagon Reservation. Failure to comply with the physical access restrictions and conduct requirements set forth in this in-brief may result in loss of access to the Pentagon. Additionally, this briefing informs you of the procedures associated with denying, revoking, or not renewing the issuance of a PFAC, including contesting such a decision (see Appendix A).

General Security

Members of the news media do not possess a legal right to access the Pentagon; rather, such access is a privilege extended by the government. Pursuant to 10 U.S.C. § 2674, the Secretary of War has jurisdiction, custody, and control over, and responsibility for, the operation, maintenance, and management of the Pentagon Reservation. Under this statute, the Secretary is authorized to prescribe appropriate regulations to ensure the safe, efficient, and secure operation of the Pentagon Reservation. 32 C.F.R. Part 234 addresses conduct on the Pentagon Reservation, and section 234.4 of this part makes clear that entering or remaining on Pentagon property without express invitation or consent from those with lawful control is prohibited. The regulation applies "to all persons entering in or on the property" (see 32 C.F.R. § 234.2), including members of the news media, and provides that individuals who violate a Department rule or regulation may be ordered to leave or barred from reentry. Having chosen to extend this privilege, the Department will not deny, revoke, or suspend a PFAC arbitrarily or on the basis of the content or viewpoint of a journalist's reporting.

Be alert for suspicious activity and immediately report any unusual activity and/or circumstances to the Pentagon Force Protection Agency (PFPA) at (703) 697-1001.

Ensure office doors are locked, and property is secure when exiting your office or cubicle.

Every individual entering the building is subject to random metal detector and X-ray inspection of personal belongings. Many events, including those involving the Secretary of War, Deputy Secretary of War, or visiting high-level U.S. government officials or foreign dignitaries, require additional security screenings to which PFAC holders would be subject.

1

Every individual exiting the building, regardless of status (e.g., military Service member, civilian employee, member of the news media), is subject to random checks of personal belongings.

A property pass is required to remove property from the building that is not readily identifiable as personal. When you or other members of your organization (e.g., technicians, photographers) remove equipment owned by your organization, obtain a property pass in advance to avoid problems when exiting the building. Property passes may be obtained in the Pentagon Press Operations (PPO) office, room 2D961, during normal working hours.

PFAC Security

Maintaining the security of your PFAC is an individual responsibility.

PFACS must be visible and always worn above the waist while in the Pentagon, except as noted below during press or other recorded events. Remove or hide your PFAC from view when not in the Pentagon.

Exceptions for press and other events: Do not have your PFAC visible in the following circumstances: when present during an on-camera press briefing; when doing a live-shot in the Pentagon Briefing Room or stand-ups at the Mall Entrance, River Parade Field, or on the Connector Parking Lot hill; when covering honor cordon arrival ceremonies; if on-camera during an open press event on the Pentagon Reservation; or at any other events that will be recorded via photograph or video. For those with a recording studio in the Pentagon, do not have your PFAC visible when recording in your studio.

Lost PFACS should be immediately reported to PPO at (703) 697-5131, or, after normal working hours, to (703) 678-6162 or to OSD.PA.Duty Officer@mail.mil. Normal working hours for PPO on non-holiday weekdays are 7:30 a.m. to 6 p.m. Eastern Time.

Additional Press Identifier Badge

The Additional Press Identifier Badge (APIB) (see Appendix B) must also be visible and always worn above the waist while in the Pentagon. Note that APIBS serve only as an additional visual identifier. APIBS are not credentials and do not confer credentialing or attendance approval for any event.

News Media Physical Security Restrictions on the Pentagon Reservation

2

Effective May 23, 2025, in accordance with Secretary of War Memorandum, "Updated Physical Control Measures for Press/Media Access within the Pentagon," May 23, 2025 (Appendix C), physical security restrictions have been enacted for news media, including those with valid, current PFACS.

Effective March 23, 2026, the Correspondents' Corridor is closed. A new press workspace will be established in an annex facility outside the Pentagon and will be available when ready. The Department will notify PFAC holders when the new workspace is operational. This closure fulfills the Department's previously announced commitment to upgrade the space used by PFAC holders to a different area that provides WiFi access, cell phone service, and increased space for the expanded press corps.

Until the new workspace is operational, PFAC holders will continue to have access to the Pentagon for the following purposes, with escort by authorized DoW personnel at all times:

- Scheduled press briefings and press conferences in the Pentagon Briefing Room;
- Interviews and meetings arranged through OATSW(PA) or the sponsoring public affairs office;
- Press events announced by OATSW(PA), the public affairs office for the Office of the Chairman of the Joint Chiefs of Staff, or the public affairs offices of the Military Departments or Headquarters, U.S. Marine Corps;
- Honor cordons and events at the Pentagon River Terrace Parade Field, the Pentagon Auditorium, and the Pentagon Center Courtyard;
- Other events specifically approved by OATSW(PA).

In breaking news situations, PFAC holders will gather at the Pentagon Library and Conference Center and be escorted into the Pentagon by authorized DoW personnel.

News media are not authorized to be anywhere in the Pentagon at any time without an escort from an authorized DoW official. If personnel see any news media inside the Pentagon without an escort, they should direct them to the Pentagon Press Operations office and alert PPO at 703-697-5131.

As a non-government employee, while a PFAC is your authorized means of entering the Pentagon, a PFAC does not allow you unfettered access to all of the Pentagon. When in the Pentagon, you must remain with your escort at all times.

<u>Public Release of DoW Information and the Protection of Classified National Security Information and Controlled Unclassified Information</u>

DoW remains committed to transparency to promote accountability and public trust. However, DoW information must be approved for public release by an appropriate authorizing official before it is released by any military member, DoW civilian employee or contract employee, even if it is unclassified. The Department of War must safeguard classified national security information (CNSI), in accordance with Executive Order 13526 and the Atomic Energy Act, and information designated as controlled unclassified information (CUI), in accordance with Executive Order 13556. CUI may include, but is not limited to, information protected by the Privacy Act, information that is law enforcement-sensitive, and certain operational security information. Beyond CNSI and CUI, additional authorities may restrict the disclosure of certain information. Given the complexities of the various laws and policies concerning disclosure of information, DoW employees are required to have all information cleared for release by an appropriate authorizing official.

Military members, in particular, face potentially severe consequences for disclosing non-public information without proper authorization. Article 92 of the Uniform Code of Military Justice imposes criminal liability on military members who violate a lawful order or regulation.

Both military members and DoW civilian employees also face potential criminal liability under 18 U.S.C. § 1905 for disclosure of confidential information or under the Privacy Act, 5 U.S.C. § 552a, for knowing and willful unauthorized disclosures.

Only authorized persons who have received favorable determinations of eligibility for access, signed approved non-disclosure agreements, and have a need-to-know may be granted access to CNSI. DoW may only provide CUI to individuals when there is a lawful governmental purpose for doing so.

To be clear, the foregoing laws and regulations apply to military members, DoW civilian employees, and contractors. Members of the news media are not required to submit their writings to DoW for approval. Members of the news media remain free to gather information through legitimate means, such as Freedom of Information Act requests, official briefings, questions posed to authorized Department spokespersons and officials, or unsolicited tips, and to publish as they deem newsworthy. The receipt of unsolicited information, including CNSI or CUI, and its subsequent publication, is protected by the First Amendment. Nothing in this in-brief prohibits a PFAC holder from engaging in constitutionally protected journalistic activities, such as investigating, reporting, or publishing stories.

Escort Privileges and Procedures

A PFAC authorizes media members who are U.S. citizens to access the Pentagon with escort by authorized DoW personnel for the purposes described in the "News Media Physical

4

Security Restrictions" section above, and affords escort privileges for up to three visiting media members from the same media outlet who possess appropriate media credentials.

Visiting media members must be entered into the PFPA Visitor Management System (VMS) by the sponsoring U.S. public affairs office no later than one business day in advance for U.S. citizens and no later than three business days in advance for non-U.S. citizens.

PFAC Issuance and Renewals

PFACs may be issued to those media members who require regular access to the Pentagon, who are accessing the building at a minimum monthly visit frequency. See PPO for the current minimum monthly visit frequency. You must continue to meet the minimum access frequency requirement to be reissued a PFAC. There are two probationary periods for an initial PFAC issuance.

An initial PFAC expires in three months, on the last day of the third month. You may submit a request for renewal at the beginning of the month of expiration. Media members who have met the minimum monthly visit frequency requirements during the initial three-month probationary period will generally be approved for a six-month badge.

The second probationary period is for six months. Requests for renewals of a six-month PFAC may be submitted at the beginning of the month of expiration. Media members who have met the minimum monthly visit frequency requirements during the six-month probationary period during both the initial three-month and subsequent six-month probationary periods, will generally be approved for a one-year PFAC.

If the two probationary periods have been completed successfully and all requirements have been met, PFACs will be renewed annually. During annual renewal reviews, if frequency requirements have not been met, PFAC renewals may be denied or revert to 3- or 6-month PFACS.

For all renewals, PFACs expire on the last day of the month of expiration. Renewal requests should be submitted at the beginning of the month of expiration, but not before the start of the month of expiration. Requests received prior to the start of the month will not be processed until the first business day of the month. Due to processing times, renewal requests should be submitted to PPO no later than the middle of the month of expiration to ensure a new badge is available before the old one expires.

Frequency requirements may be waived by OATSW(PA) for a news organization's equipment technicians and some camera crews, if specifically identified and requested by the

5

bureau chief. For first-time applications, equipment technicians and camera crews must still go through the two probationary periods.

PFACs may be denied, revoked, or not renewed if a person meets any of the criteria set forth in Appendix A, or is not meeting the frequency requirements. See Appendix A for the applicable standards and the process for denying, revoking, or not renewing a PFAC.

Press Parking

Parking on the Pentagon Reservation is restricted to vehicles with permanent parking permits, or which have been cleared for temporary parking for specific days. Vehicles may only be parked in the areas for which they have been cleared.

There is a designated parking area for the news media at the Pentagon. The parking spaces in two lanes of the Connector Lot, located at intersection of Connector Road and Boundary Channel Drive, have been reserved for the press (see Appendix E). These parking spaces are clearly marked with "PRESS" stenciled on the ground.

To access the building, for those with a PFAC, walk north towards Boundary Drive and go up either the stairs or the ramp to the pedestrian bridge. At the security checkpoint, swipe your badge and then show it to the PFPA officer on duty. See the route depicted at Appendix E. The checkpoint opens at 6:00 a.m. and closes at 8:00 p.m. on weekdays. The checkpoint is closed on weekends and federal holidays. All visiting press must go through the Visitor Center at the Pentagon Metro Entrance.

There are a limited number of permanent "P" parking permits for news media members. Those who have such permits may park in designated PRESS spaces with their approved "P" parking permit at any time. News media members with "P" permit are not authorized to park elsewhere on the Pentagon Reservation, except when provided specific guidance to do so for special circumstances (e.g., when the Connector Lot is being re-surfaced, or closed for a special event). For such instances, PPO will provide information on where you may park.

News media members desiring to be issued a "P" parking pass should contact PPO; there is usually a waiting list for available permit.

News media without a "P" parking permit may also park in the PRESS area provided they obtain an approved temporary parking clearance prior to their arrival at the Pentagon. News media should contact the PPO Admin Support Team at 703-697-5131 at least 30 minutes prior to their arrival to request temporary parking clearance, and must provide the PPO with the following information: date requesting to park if not the day of the call, driver's name, email,

6

phone number, media outlet, vehicle make, vehicle model, vehicle color, license plate number, state of registration, vehicle classification (car/truck/motorcycle/etc.), fuel type (gas/diesel/hybrid/electric), and whether it is a personal vehicle or a business vehicle. For repeat visits using the same vehicle, press need only provide date, name, and vehicle license plate. For parking on weekends, call the PPO Duty Officer at 703-678-6162.

News media may request temporary parking clearance for up to 5 days per month. Press can request an exception from the PPO for more days only on a case-by-case basis.

Overnight parking at the Pentagon is not permitted for members of the news media. Overnight parking is considered parking for more than 24 hours at a time.

If you are issued a "P" parking permit, you will be required to return it to the PPO upon completion of your media/press duties, or upon the expiration of the "P" parking permit.

Access on Weekends

If news media need to access the Pentagon on weekends, holidays, or when the pedestrian bridge between the Connector Lot and River Entrance is closed, news media may park in the press parking area and walk along Connector Road to River Road, go through a pedestrian turnstile, and continue walking up the River Road to Mug Handle to get to the River Entrance, which is open 24/7. See Appendix E for a depiction of the route. Note that those without a "P" parking permit must still provide their vehicle information to the PPO Duty Officer at 703-678-6162.

Mall Entrance Temporary Parking

News media crews that are doing a stand-up at the Mall Entrance location may request Mall parking. Mall Entrance parking is by reservation only. News media should contact the PPO Support Team at 703-697-5131 at least two hours prior to their arrival to request Mall Entrance parking clearance and must provide the same information as for regular press parking (see above) with the addition of time and arrival. Note that due to demand, there may be times when parking in the Mall Entrance lot is restricted to four hours per day. Visiting press who need to be at the Pentagon all day should park either in regular press parking or at the Mall Entrance. Parking at the Mall Entrance is by numbered spaces; PPO will provide the numbered parking space for each vehicle when Mall Entrance Parking is requested.

Filming/Photography

7

Filming, photography, and audio recording on the Pentagon Reservation is prohibited, unless approved in advance. In accordance with 32 CFR § 234.15 - Use of visual recording devices:

(a) The use of cameras or other visual recording devices on the Pentagon Reservation is prohibited, unless the use of such items are approved by the Pentagon Force Protection Agency, the Installation Commander, or the Office of the Assistant to the Secretary of War for Public Affairs.

(b) It shall be unlawful to make any photograph, sketch, picture, drawing, map or graphical representation of the Pentagon Reservation without first obtaining permission of the Pentagon Force Protection Agency or the Office of the Assistant to the Secretary of War for Public Affairs.

Note that this prohibition applies to the use of apps on mobile devices that utilize the front-facing camera lens, such as "FaceTime" or the taking of "selfies."

News media visiting the National Pentagon 9/11 Memorial in their personal capacity, not as a member of the press, may take photos using their personal devices. Filming or photography in the Memorial for a news media interview or to obtain b-roll requires an exception, as described below under Filming/Photography Exception Requests.

Filming/Photography Pre-Approved Exceptions

News media do not need to obtain permission in advance for filming, photography, or audio recording in the following circumstances:

- Press events in the Pentagon Briefing Room.
- Press events announced by OATSW(PA), the public affairs office for the Office of the Chairman of the Joint Chiefs of Staff, or the public affairs offices of the Military Departments or Headquarters, U.S. Marine Corps, that are not located in the Pentagon Briefing Room. Examples would include honor cordons and events at the Pentagon River Terrace Parade Field, the Pentagon Auditorium, and the Pentagon Center Courtyard.
- Unilateral news media stand-ups in the Pentagon Briefing Room, if approved, at the designated stand-up location outside the Mall Entrance, or live or recorded shots inside the network studio rooms in the Correspondent's Corridor.
- Recording audio of off-camera interviews approved and monitored by authorized DoW public affairs personnel.

Filming/Photography Exception Requests

The filming/photography exception requests discussed below require public affairs escort from either OATSW(PA) or the sponsoring public affairs office, regardless of whether the news media involved have a current PFAC or are visiting press.

- News media desiring to obtain b-roll or stock footage or photos of the Pentagon interior or exterior must submit a request to PPO a minimum of one week in advance to obtain permission. If this request is in conjunction with a press event sponsored by a public affairs office other than OATSW(PA), submit the request through the sponsoring public affairs office. Requests should include date and times and either the exact location or sufficient information for the public affairs office to determine the best available locations for the footage or photos.
- News media desiring to film DoW officials standing or walking in a corridor in conjunction with an interview must submit a request through the sponsoring public affairs office to PPO a minimum of one week in advance to obtain permission. Request must include date, time, and exact location.
- News media desiring to photograph DoW officials in their offices or conference rooms in conjunction with an interview must submit their request through the sponsoring public affairs office to the security manager for that space.
- News media desiring to obtain b-roll or interview or film anyone inside the National Pentagon 9/11 Memorial must submit a DD Form 2798, "Application/Permit for Use of Space on the Pentagon Reservation," at least one week in advance to the Pentagon Facility Operations Division Special Events Office at whs.pentagon.fsd.mbx.pbmo-special-events@mail.mil.

Filming/Photography from the Press Parking Area

News media desiring to do a stand-up or film from the grassy hill next to the press parking area (see Appendix E) should submit a request to PPO no later than three hours in advance. Requests should include the date, time, and the number of personnel in the crew. Once approved, filming from the grassy hill does not require public affairs escort.

Pandemics, National Health Emergencies, and Other Contingencies

During a declared pandemic or national health emergency, the DoW will protect the workforce while continuing to perform its national security mission. Protecting the workforce may entail the adoption of personal protective measures, restrictions on access to the Pentagon for essential functions only, symptom screenings, or other measures.

In the event of a declared pandemic or national health emergency, news media entering the Pentagon are expected to follow the same personal protective measures as DoW personnel

9

and as required by Health Protection Condition (HPCON) announcements. Failure or refusal to comply may result in a loss of access, ranging from temporary suspension to revocation of PFACS.

Additionally, news media are not considered essential personnel. During a declared pandemic or national health emergency, news media may temporarily be denied physical access to the Pentagon.

During other general emergency contingencies (e.g., fires, active shooters, natural disasters, utility outages), news media physical access to the Pentagon may be temporarily curtailed or denied.

Standards for PFAC Determinations

**Grounds for Denial, Revocation, or Non-Renewal.** A PFAC shall be denied, revoked, or not renewed only on the grounds set forth in Appendix A. No PFAC determination shall be based on the content, viewpoint, or perceived editorial perspective of an applicant's or holder's journalism.

**Intentional Inducement of Unauthorized Disclosure.** The Court in *New York Times Co. v. Department of Defense*, No. 25-04218 (D.D.C. Mar. 20, 2026), characterized the original Policy's use of the term "solicitation" as ambiguous, stating that "to 'solicit' in the everyday sense means 'to approach (someone) with a request or plea'" and that "a charity requesting donations, a community organizer calling on volunteers, or a journalist asking questions is not a crime." *Id.*, slip op. at 21. The Department agrees that asking questions is not a crime. The original Policy never prohibited asking questions. To correct the Court's mischaracterization, the Department has replaced the term "solicitation" with "intentional inducement of unauthorized disclosure."

For purposes of this Policy, "intentional inducement of unauthorized disclosure" means intentionally encouraging, inducing, or requesting that a specific Department employee disclose classified national security information or CUI that the journalist knows that the specific Department employee is not authorized to disclosing under Article 92 of the Uniform Code of Military Justice (10 U.S.C. § 892), 18 U.S.C. § 1905, or 5 U.S.C. § 552a. This is an administrative standard for PFAC determinations; it does not constitute a criminal charge or referral.

A journalist's offer of anonymity or privacy protection to a Department employee in exchange for information shall create a rebuttable presumption that the journalist knew the employee was not authorized to disclose the information sought. This presumption may be

10

rebutted through the procedures set forth in Appendix A by evidence that the journalist did not know that the employee was unauthorized to disclose the information notwithstanding the offer of anonymity.

The following do not constitute "intentional inducement of unauthorized disclosure" under this Policy, notwithstanding the general definition of that term above:

(a) Asking questions of Department personnel who are authorized to speak with the press, including Public Affairs Officers, designated spokespersons, and other personnel speaking on the record in their official capacity, regardless of the subject matter of the question;

(b) Receiving unsolicited information, including classified national security information or controlled unclassified information;

(c) Publishing calls for tips or other general appeals to the public at large that are not specifically directed at Department personnel;

(d) Developing source relationships outside the Pentagon through independent reporting;

(e) Communicating with Department personnel through official channels for public disclosure of information, including press briefings, press conferences, interviews arranged through public affairs offices, and Freedom of Information Act requests.

(f) Asking questions of any Department employee where the journalist does not know that the employee is not authorized to disclose the information sought.

**Due Process Protections.** Without conceding the validity of the Court's analysis, the revised Policy provides the following protections regarding suspension of a PFAC: Before any PFAC is denied, revoked, or not renewed on the grounds set forth in Appendix A, the applicant or holder shall receive the process set forth in Appendix A, Part B. A PFAC may be immediately suspended if the Director, PFPA, or designee, determines that the holder has engaged in conduct described in Appendix A, Part A and that the nature of the conduct requires immediate action to protect the security of Pentagon personnel, property, or information pending the completion of the procedures set forth in Appendix A, Part B. In such cases, the holder shall receive written notice within 24 hours stating the specific subsection of Part A that applies, and the full procedures described in Appendix A, Part B shall commence immediately.

**No Waiver of Rights.** Nothing in this document requires you to waive any constitutional rights. This in-brief constitutes a description of DoW policies.

**APPENDIX A:** <u>DENIAL, REVOCATION, OR NON-RENEWAL OF PENTAGON FACILITY ALTERNATIVE CREDENTIALS</u>

A. <u>Grounds for Denial, Revocation, or Non-Renewal.</u> The Director, PFPA, or designee, shall deny, revoke, or refuse to renew the PFAC of any person who meets one or more of the following criteria. These are the sole grounds for denial, revocation, or non-renewal of a PFAC based on security considerations. No PFAC shall be denied, revoked, or not renewed on grounds not enumerated in this section.

<u>Conviction-Based Grounds.</u> Conviction of an offense involving:

(1) National defense (such as treason, sabotage, terrorism, or espionage).
(2) The use, attempted use, or threatened use of physical force against another person (such as murder, manslaughter, assault, rape, robbery, or kidnapping) or conduct that presents a serious potential risk of physical injury to another (such as arson, burglary, or the unlawful possession of explosives or firearms).
(3) Unlawful manufacturing or distribution of drugs.
(4) Threatening or harassing communications directed at Department personnel or facilities.
(5) Theft, embezzlement, trespassing, or property destruction on the Pentagon Reservation or other Department facility.
(6) Fraud or deceit in connection with obtaining or maintaining access to a government facility or government information systems.
(7) Engaging in operations and activities that are unsafe, failing to abate an identified hazard, endanger others, or creating a condition immediately dangerous to life or health

A conviction described in subsections (1) through (7) creates a rebuttable presumption that the applicant or holder poses a security risk. The applicant or holder may rebut this presumption by demonstrating, through the procedures set forth in Part C below, that granting or maintaining the PFAC is clearly consistent with the security of the Pentagon Reservation. Factors relevant to rebuttal include the nature and seriousness of the offense, the time elapsed since the conviction, evidence of rehabilitation, and the applicant's or holder's conduct since the conviction. Any doubt as to whether the applicant or holder poses a security risk shall be resolved in favor of the security of the Pentagon Reservation.

<u>Conduct-Based Grounds.</u> Engaging in conduct that would constitute an offense described in subsections (1) through (7) above, or inducement of unauthorized disclosure as defined in the "Standards for PFAC Determinations" section of this in-brief. For a final determination based on conduct, the Director, PFPA, or designee, must find that substantial evidence supports the determination that the conduct described in the applicable subsection occurred. Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support the conclusion. A conduct-based determination does not require a criminal charge, indictment, or conviction. The written determination shall identify:

(g) The specific subsection of this Part A that the conduct would constitute;
(h) The specific facts supporting the determination, including the date, time, location, and nature of the conduct;

12

(i) The identity of any witnesses or the source of any documentary evidence supporting the determination, to the extent that disclosure would not compromise an ongoing investigation or the safety of any individual; and

(j) The basis for the Director's determination that substantial evidence supports the conclusion that the conduct occurred.

The PFAC holder shall receive the full procedures set forth in Part C below, including the opportunity to contest the factual basis for the determination. A conduct-based determination is subject to the same rebuttable presumption framework as a conviction-based determination: the holder must demonstrate that granting or maintaining the PFAC is clearly consistent with the security of the Pentagon Reservation. Any doubt as to whether the holder poses a security risk shall be resolved in favor of the security of the Pentagon Reservation.

Standard of Review. For conduct-based determinations under this section, the Director, PFPA, or designee, must find that substantial evidence supports the determination that the conduct described in the applicable subsection occurred. For immediate suspension under Part B, the Director, PFPA, or designee, must find probable cause to believe the conduct occurred. For rebuttal of a conviction-based or conduct-based presumption, the applicant or holder must demonstrate that granting or maintaining the PFAC is clearly consistent with the security of the Pentagon Reservation; any doubt as to whether the applicant or holder poses a security risk shall be resolved in favor of the security of the Pentagon Reservation. The final decision of the Director, PFPA, or designee, shall constitute a final agency decision subject to judicial review under 5 U.S.C. § 706(2)(A). These standards are consistent with those applied in security clearance adjudications under Executive Order 12,968.

B. Immediate Suspension. A PFAC may be immediately suspended if the Director, PFPA, or designee, determines that there is probable cause to believe that the holder has engaged in conduct described in Part A and that the nature of the conduct requires immediate action to protect the security of Pentagon personnel, property, or information pending the completion of the procedures set forth in Part C. Probable cause exists when the facts and circumstances known to the Director, PFPA, or designee, are sufficient to warrant a person of reasonable caution to believe that the conduct described in Part A has occurred.

In such cases:

(8) The holder shall receive written notice within 24 hours stating the specific subsection of Part A that applies, the specific facts establishing probable cause, and the basis for the determination that immediate action is required.

(9) The full procedures described in Part C shall commence immediately upon issuance of the written notice.

(10)   The immediate suspension shall remain in effect until a final decision is issued under Part C, unless the Director, PFPA, or designee, determines that the basis for the immediate suspension no longer exists.

(11)   At the final determination stage under Part C, the Director, PFPA, or designee, must find that substantial evidence supports the determination that the conduct occurred.

If the substantial evidence standard is not met, the immediate suspension shall be lifted and the PFAC reinstated.

C. <u>Procedures for Denial, Revocation, or Non-Renewal.</u> If the Director, PFPA, or designee, anticipates that a PFAC might be denied, revoked, or not renewed, the applicant or holder or his or her authorizing official shall be notified in writing by the Director, PFPA, or designee, of the basis for the proposed denial, in as much detail as security considerations permit, citing the specific subsection of Part A that applies. When an individual's PFAC has been denied, revoked, or not renewed pursuant to a final decision under this Part, both unescorted and escorted access to any DoW facility is terminated. This section does not apply to journalists who decide not to renew for reasons unrelated to the criteria in Part A, such as a change in employment or assignment.

(1) The notification of proposed denial, revocation, or non-renewal shall inform the applicant or holder of the right to respond to and rebut any factual basis supporting the proposed denial, revocation, or non-renewal.
(2) The applicant or holder will be allowed 30 days from the mailing date of the proposed denial, revocation, or non-renewal notification to make an appeal appointment with the Director, Pentagon Access Control Branch (PACB).
(3) If the applicant or holder or representative is unable to schedule an appointment within 30 days, an extension for one additional 30-day period will be granted on receipt of a telephone request to PACB for such an extension.
(4) If mitigating information is presented at the appointment to substantiate a reversal of denial, revocation, or non-renewal, the applicant or holder may receive a DoW Building Pass at that time.
(5) If no mitigating information is presented or if information is presented but is insufficient to substantiate the issuance of a DoW Building Pass, the applicant or holder will be allowed 30 days from the appeal appointment to respond in writing to the Director, PFPA, or designee. The response will consist of any explanation or rebuttal considered appropriate by the applicant or holder and must be signed by the applicant or holder or representative under oath or affirmation.
(6) At the time of the filing of the written response to the notification of the proposed denial, revocation, or non-renewal, the applicant or holder or representative may request, and shall be granted, the opportunity to make a personal appearance before the Director, PFPA, or designee, to personally support his or her eligibility for a pass and to rebut or explain the factual basis for the proposed denial.
(7) On the basis of the written or oral response to the proposed denial, revocation, or non-renewal, the Director, PFPA, or designee, shall determine whether further inquiry or investigation on the issues raised is necessary.
   (k) If a decision is made that no such inquiry is necessary, a final decision shall be issued within 30 days.
   (l) If a decision is made that further inquiry is necessary, the Director, PFPA, or designee, shall conduct such inquiry and issue a final decision within 60 days of the personal appearance.
(8) Upon receipt of the applicant's or holder's written or oral response explaining or rebutting the factual basis for the proposed denial, revocation, or non-renewal, and upon

14

completion of any additional inquiry, a final decision shall be made by the Director, PFPA, or designee. If a final adverse decision is reached, the applicant or holder shall be notified of the final decision in writing. The notification shall state, as precisely as security considerations permit, the factual basis for the denial, citing the specific subsection of Part A that applies.

(9) The decision of the Director, PFPA, or designee, under this section shall constitute a final agency decision subject to judicial review under 5 U.S.C. § 706(2)(A).

[Appendices B through E remain unchanged, except that Appendices D and E shall be updated to reflect the relocation of the press workspace to the Pentagon Library and Conference Center.]