**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THE NEW YORK TIMES COMPANY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DEPARTMENT OF DEFENSE a/k/a/ DEPARTMENT OF WAR, *et al.*, <br><br> Defendants. | Civil Action No. 1:25-cv-04218-PLF |

**BRIEF OF *AMICUS CURIAE* PENTAGON PRESS ASSOCIATION**
**IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL COMPLIANCE**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ....................................................................................1

ARGUMENT ...............................................................................................................1

I.    THE DEPARTMENT IS REFUSING TO GIVE EFFECT TO THE ORDER
      VACATING ITS NEW RESTRICTIONS ON NEWSGATHERING AT THE
      PENTAGON ....................................................................................................1

II.   THE DEPARTMENT'S REFUSAL TO IMPLEMENT THE COURT'S
      ORDER IS CAUSING ONGOING, IRREPARABLE HARM ..............................4

CONCLUSION............................................................................................................7

## **TABLE OF AUTHORITIES**

**Cases**

*Ateba v. Leaavitt*,
   133 F.4th 114 (D.C. Cir. 2025)................................................................................. 4

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
   140 S. Ct. 1891 (2020)........................................................................................ 5

*Las Ams. Immigrant Advoc. Ctr. v. U.S. Dep't of Homeland Sec.*,
   783 F. Supp. 3d 200 (D.D.C. 2025) ..................................................................... 2

*Standing Rock Sioux Tribe v. United States Army Corps of Eng'rs*,
   985 F.3d 1032 (D.C. Cir. 2021)............................................................................ 2

*United Steel v. Mine Safety & Health Admin.*,
   925 F.3d 1279 (D.C. Cir. 2019)............................................................................ 2

**Statutes**

5 U.S.C. § 706(2) ..................................................................................................... 1

**Other Authorities**

Col. Ryan Dowdy, *The Military and the Media: A Match Made In . . . Necessity?*,
   War Room: Online J. (Oct. 1, 2019) ...................................................................... 6

*Iran Escalates Retaliatory Strikes as U.S. Signals Long Battle*,
   N.Y. Times (Mar. 2, 2026) ................................................................................... 5

Zachary D. Streit, *Investigative Journalism and National Security*,
   5 Cardozo Pub. L. Pol'y & Ethics J. 75, 84–86 (2006) ........................................ 7

**PRELIMINARY STATEMENT**

Amicus Pentagon Press Association (PPA) submits this brief in support of Plaintiffs' motion to compel compliance with the Court's March 20, 2026, order. ECF No. 37 (the Order). The Defense Department has refused to accept and implement the Court's vacatur of restrictions it imposed on security-cleared reporters holding Pentagon Facility Alternate Credentials (PFACs). Instead, it has acted to preserve the unconstitutional restrictions vacated by this Court and, indeed, imposed even more severe restrictions designed to thwart independent newsgathering and reporting. The Interim Policy announced by the Department in response to the Court's Order now prohibits PFAC holders—reporters who have passed security background checks—from any access to the Pentagon without an official escort, a Department "minder" imposed to prevent the "semi-formal and informal conversations" the Court has recognized to be "crucial" to reporting "accurately and effectively about defense policy and military operations." ECF No. 35 at 5.

The newest, unreasonable, and viewpoint-motivated restrictions on reporters' previously unbroken tradition of engaging in journalism at the Pentagon flout this Court's Order and inflict ongoing, irreparable harm on the members of the PPA.

**ARGUMENT**

**I.     THE DEPARTMENT IS REFUSING TO GIVE EFFECT TO THE ORDER VACATING ITS NEW RESTRICTIONS ON NEWSGATHERING**

In granting Plaintiff's motion for summary judgment, this Court declared unconstitutional the new restrictions on newsgathering within the Pentagon that the Department added to its Media In-Brief policy ("Policy") last fall. ECF No. 34 at 1–3. The Court expressly ordered that "the Challenged Provisions of the Policy are VACATED and SET ASIDE and that such vacatur applies to all regulated parties." *Id.* at 3; *see* 5 U.S.C. § 706(2) (authorizing a reviewing court to "hold unlawful and *set aside* agency action"). Vacatur automatically "re-establish[es] the status quo" as

it existed "absent the unlawful agency action." *Las Ams. Immigrant Advoc. Ctr. v. U.S. Dep't of Homeland Sec.*, 783 F. Supp. 3d 200, 233 (D.D.C. 2025); *see United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279, 1287 (D.C. Cir. 2019) ("We agree with the parties that vacatur of the 2018 Amendment *automatically* resurrects the 2017 Standard. The 2018 Amendment modifies the terms of the 2017 Standard and so vacatur of the 2018 Amendment simply undoes those modifications."); *see also Standing Rock Sioux Tribe v. United States Army Corps of Eng'rs*, 985 F.3d 1032, 1051 (D.C. Cir. 2021) (explaining that to remand without vacatur, courts must consider the disruptiveness of returning to the status quo). With the Policy revisions vacated, the Pentagon was thus required to restore PPA members' PFACs under the terms and conditions that existed prior to its October 2025 policy as part of its obligation to return to the status quo. It has failed to do so.

On the same day the Court entered its Order, PPA counsel contacted the Department's counsel to seek assurance that the existing PFACs revoked on October 15, 2025, would be returned immediately. *See* Boutrous Second Decl. Ex. 3, ECF No. 37-4. That letter pressed the urgency of restoring regular access to PPA's members, all of whom had already passed background checks and needed their PFACs returned to do their jobs: "[O]ur clients and the public face ongoing, irreparable harm so long as the experienced military reporters of the PPA are excluded from the Pentagon while active combat operations are being conducted in multiple arenas. The revocation of their PFACs has prevented… access to officials with timely information vitally needed by the American public." *Id.* That letter was never answered.

Instead, on March 23, 2026, the Department announced a new "Interim Policy" to govern reporters holding PFACs. *See* Boutrous Second Decl. Ex. 1, ECF No. 37-2. As set forth in Plaintiffs' motion to compel compliance, ECF No. 37, the Interim Policy not only retains, in large part, the provisions this Court declared unconstitutional but also imposes significant new

2

restrictions on PFAC holders.  The Interim Policy moves reporters' workspace to an annex facility outside the Pentagon and prohibits any reporter from moving within the Pentagon itself without an escort, further limiting their ability to actually do journalism in the forum designated specifically for that purpose.  Boutrous Second Decl. Ex. 1 at 3, ECF No. 37-2.

The only justification the Department offers for the Interim Policy's new restrictions is that the Court's Order supposedly "remov[ed] …all security screening authority" and "unescorted access to the Pentagon cannot be responsibly maintained without the ability to screen credential holders for security risks." Boutrous Second Decl. Ex. 7, ECF No. 37-8. This is multiply mendacious: This Court never removed the Department's background screening authority. The reporters whose PFACs were reinstated by the vacatur order have *already* been screened. And, thousands of other individuals, including food service workers, concession employees, hall-roaming baristas, and others, travel around the building's unsecured areas every day, entirely unescorted.[1]  Singling out PPA members and removing *their* ability to travel unescorted in these same unsecured areas is not a security necessity; it is a retaliatory measure to further punish journalists for publishing news reports the Department's leadership considers inappropriate.   It contravenes a "primary purpose of the First Amendment," which "is to enable the press to publish what it will and the public to read what it chooses, free of any official proscription."  Opinion, ECF 35 at 1.

---

[1] An estimated 3,000 "non-defense support personnel" work within the Pentagon's 75 miles of corridors. *See* "Military Installations, Installation Details," Military OneSource, Pentagon - Air Force | Base Overview & Info | MilitaryINSTALLATIONS. For example, retail establishments with employees currently working in the Pentagon include: CVS, AT&T, The Lynch Collection, Greensleeves Florist, The Original Velatis Caramel Company, Lumos Jewelers, Fort America, New York Tailors laundry/dry cleaning, and others. *See* Request for Proposals from Dep't of Defense Concessions Committee (June 18, 2025), DoDCC+RFP+DoDCC-2025-R-0001+Retail+Baked+Goods+The+Pentagon.pdf.

Nor has the Department ever identified any breach of security or established any new need to justify the newsgathering restrictions imposed on PFAC holders. It did not do so when first revising its Policy last fall. *See* ECF No. 35 at 7. As the Court found, "[t]he regular presence of PFAC holders at the Pentagon has enhanced the ability of journalists and news organizations to keep Americans informed about the U.S. military *while posing no security or safety risk to Department property or personnel*." *Id.* at 5 (emphasis supplied). The Interim Policy is equally devoid of any identified security need for the substantially *increased* burdens it imposes on journalists. Eliminating a reporter's ability to travel freely through unsecured areas of the Pentagon imposes yet another unreasonable restriction on a forum for newsgathering that has served the public and the military well for eighty-four years, without significant incident. *See* PPA Amicus Brief at 3–8, ECF No. 15-1.

The Court already has made clear that "[a]s a nonpublic forum, access to the [Pentagon] can only be restricted as long as the restrictions are viewpoint neutral and reasonable." ECF No. 35 at 36 (citing *Ateba v. Leavitt*, 133 F.4th 114, 123 (D.C. Cir. 2025) (internal citations and quotations omitted)). The effort to not only preserve the vacated restrictions on newsgathering, but make them much worse, reflects a refusal to implement the Court's Order by Pentagon leadership that "has been and continues to be openly hostile to the 'mainstream media,' whose reporting it views as unfavorable." ECF No. 35 at 27.

## II.    THE DEPARTMENT'S REFUSAL TO IMPLEMENT THE COURT'S ORDER IS CAUSING ONGOING, IRREPARABLE HARM

The Department's refusal to give effect to the vacatur of its revised Policy significantly harms the First Amendment-protected newsgathering of the experienced military reporters whose PFACs were wrongfully revoked. These journalists seek to report timely, correct, and comprehensive information about the military operations ongoing now in the Mideast, Latin

4

America, and the Caribbean.  Without reliable access to the Pentagon, they face significant hurdles in reaching public affairs officials and in covering Defense Department actions at a time when the military is engaged in multiple, rapidly evolving operations likely to have long-term implications for the U.S. military and U.S. foreign policy.  *See Iran Escalates Retaliatory Strikes as U.S. Signals Long Battle*, N.Y. Times (Mar. 2, 2026), https://www.nytimes.com/live/2026/03/02/world/iran-us-israel-attack-trump.  Even further, many of the now-excluded reporters have built their careers on reporting at the Pentagon, and the refusal to restore their PFACs under the conditions that existed before the new Policy was implemented substantially prejudices their reliance interest in a historically open and accessible Pentagon.  *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30–33 (2020) (holding that an agency must weigh reliance interests "[w]hen [it] changes course" and when not "writing on a blank slate").

The current situation is chaotic and driven by the Department's desire to control the viewpoint of reporting on its activities and officials, as the Court has already found.  ECF No. 35 at 27–30.  The Department's refusal to implement the vacatur Order creates "an unprecedented and significant impediment" to the ability of *all* journalists "to cover the Department and its leadership, national security, and the U.S. military."  ECF No. 35 at 14.  All previously credentialed journalists, not Plaintiffs alone, continue to be prejudiced in performing their newsgathering function by the Department's refusal to restore the status quo ante.

The concrete, ongoing harm caused by the absence of experienced, credentialed reporters at the Pentagon cannot be cured later by after-the-fact access.  When the most experienced military reporters are excluded from press conferences and impromptu briefings, questions go unasked, follow-ups go unexplored, and misinformation lingers, uncorrected.  As demonstrated in PPA's initial *amicus* brief, ECF No. 15-1, accurate reporting depends on the daily contact, relationships

of trust, and familiar understanding of how the Department works that come from working in the Pentagon complex. Trusted reporter access can also rapidly dispel damaging public misinformation in fast-moving national security environments. *Id.* at 11–12. Relationships with Pentagon officials, employees, and servicemembers—built through frequent contact and professional trust—atrophy quickly.

The public interest is also being harmed by Defendants' refusal to implement the Court's Order. The public relies on Pentagon reporting to learn how our military power is being used in their name and how their tax dollars are being spent. Experienced press presence is important, at a minimum, for communicating complex military operations that the military itself struggles to convey to the public or neglects to do.[2] Without that presence, the public receives confused and incomplete information on the current war with Iran, ongoing strikes in the Caribbean and Pacific, and other controversial and costly military operations.

The current regime does not even serve the Department's own interest in providing timely information to the public and refuting misinformation. The unconstrained freedom to investigate without restriction that had prevailed at the Pentagon for decades served to reassure the public of the independence and reliability of Pentagon press corps reporting, advancing the Department's own interest in providing the transparency needed to maintain the public's confidence. Returning to the historic practice, as ordered by the Court, will advance these interests.

---

[2] *See, e.g.*, Col. Ryan Dowdy, *The Military and the Media: A Match Made In… Necessity?*, War Room: Online J. (Oct. 1, 2019), https://warroom.armywarcollege.edu/articles/the-military-and-the-media-pt1/ ("The media is essential in achieving accountability and regaining the trust of those we serve."); Zachary D. Streit, *Investigative Journalism and National Security*, 5 Cardozo Pub. L. Pol'y & Ethics J. 75, 84–86 (2006) (explaining how the Department's "zealous commitment to secrecy ends up subverting information that would both aid national security and increase the president's political capital").

**CONCLUSION**

For all the foregoing reasons, *Amicus* Pentagon Press Association respectfully urges this

Court to grant Plaintiffs' motion to compel compliance with the Court's March 20, 2026, Order.

Date submitted: March 25, 2026

Respectfully submitted,

/s/ *David A. Schulz*
David A. Schulz (#459197)
MEDIA FREEDOM & INFORMATION
    ACCESS CLINIC
ABRAMS INSTITUTE
YALE LAW SCHOOL[3]
127 Wall Street
New Haven, CT 06520
(212) 850-6103
david.schulz@yale.edu

*Counsel for Amicus Curiae Pentagon*
*Press Association*

---

[3] Yale Law School students Rick Da ('26), Stephanie Lai ('28), Taylor Maas ('27), and Tony Sjodin ('28) contributed significantly to the drafting, editing, and preparation of this brief. The views expressed herein do not purport to represent the institutional views of Yale Law School, if any.