**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| THE NEW YORK TIMES COMPANY, et al.,<br><br> *Plaintiffs*,<br><br>       v.<br><br>UNITED STATES DEPARTMENT OF DEFENSE, et al.,<br><br>*Defendants*. | Civil Action No. 1:25-cv-04218-DLF |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION**
**TO COMPEL COMPLIANCE WITH THE COURT'S ORDER**

i

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

LEGAL STANDARD .......................................................................................................... 3

ARGUMENT ...................................................................................................................... 3

I.      The Order Does Not Bar the Department from Instituting New Policies. .......................... 4

II.     The Revised Policy Is Consistent with Both the Court's Order and Its Opinion. ............... 6

        A.      The Revised Policy complies with the Order. ........................................................ 8

        B.      The Revised Policy comports with the legal principles in the Court's
                Opinion. ............................................................................................................. 13

                1.      The Revised Policy clarifies the objective grounds for PFAC
                        determinations and removes discretion, addressing the Court's Fifth
                        Amendment concerns. ............................................................................... 14

                2.      The Revised Policy clarifies that routine newsgathering is not
                        solicitation, and imposes a scienter requirement to address the
                        Court's First Amendment concerns. ......................................................... 15

                3.      The Revised Policy explicitly disavows viewpoint discrimination. ............ 16

        C.      The Revised Policy is otherwise constitutional. ................................................. 17

                1.      Knowingly inducing a violation of law is not protected by the First
                        Amendment. ............................................................................................. 17

                2.      Neutral physical access restrictions are constitutional. ............................ 19

                3.      The revised policy is not retaliatory ....................................................... 21

CONCLUSION .................................................................................................................. 22

i

# TABLE OF AUTHORITIES

**CASES**

*Anglers Conservation Network v. Ross*,
387 F. Supp. 3d 87 (D.D.C. 2019) ................................................................................ 6, 13

*Ateba v. Leavitt*,
133 F.4th 114 (D.C. Cir. 2025) ...................................................................................... 19

*Branzburg v. Hayes*,
408 U.S. 665 (1972) ....................................................................................................... 19

*Cablevision Sys. Corp. v. FCC*,
649 F.3d 695 (D.C. Cir. 2011) ....................................................................................... 18

*Chemical Mfrs. Ass'n v. Dep't of Transp.*,
105 F.3d 702 (D.C. Cir. 1997) ....................................................................................... 18

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*,
473 U.S. 788 (1985) ....................................................................................................... 19

*Counterman v. Colorado*,
600 U.S. 66 (2023) .......................................................................................................... 18

*Fla. Star v. B.J.F.,*
491 U.S. 524 (1989) ....................................................................................................... 19

*Fund for Animals v. Norton*,
390 F.Supp.2d 12 (D.D.C. 2005) ...................................................................................... 3

*Giboney v. Empire Storage & Ice Co.*,
336 U.S. 490 (1949) ....................................................................................................... 17

*Haig v. Agee,*
453 U.S. 280 (1981) ....................................................................................................... 17

*Harmon v. Thornburgh*,
878 F.2d 484 (D.C. Cir. 1989) .......................................................................................... 4

*Heartland Hosp. v. Thompson*,
328 F.Supp.2d 8 (D.D.C. 2004) ........................................................................................ 3

*Heartland Reg'l Med. Ctr. v. Leavitt*,
415 F.3d 24 (D.C. Cir. 2005) ............................................................................................ 6

ii

*McComb v. Jacksonville Paper Co.*,
336 U.S. 187 (1949)...................................................................................................... 6

*Media Matters for America v. Paxton*,
138 F.4th 563 (D.C. Cir. 2025) .................................................................................... 21

*National Rifle Association of America v. Vullo*,
602 U.S. 175 (2024)...................................................................................................... 21

*Neguse v. U.S. Immigr. & Customs Enf't*,
No. 25-CV-2463, 2026 WL 137017 (D.D.C. Jan. 19, 2026) ........................................ 5

*Richmond Newspapers, Inc. v. Virginia*,
448 U.S. 555 (1980)...................................................................................................... 19

*Salazar v. Dist. of Columbia*,
896 F.3d 489 (D.C. Cir. 2018)...................................................................................... 13

*United States v. Hansen*,
599 U.S. 762 (2023)...................................................................................................... 17

*United States v. Kim*,
808 F. Supp. 2d 44 (D.D.C. 2011) ............................................................................... 17

*United States v. Morison*,
844 F.2d 1057 (4th Cir. 1988)...................................................................................... 17

*United States v. Williams,*
553 U.S. 285 (2008)...................................................................................................... 17

*Watkins v. Washington*,
511 F.2d 404 (D.C. Cir. 1975)........................................................................................ 3

*Zerilli v. Smith*,
656 F.2d 705 (D.C. Cir. 1981)...................................................................................... 19

**STATUTES**

10 U.S.C. § 2674...................................................................................................................... 19

**OTHER AUTHORITIES**

L.R 7 ......................................................................................................................................... 3

**INTRODUCTION**

The Department has complied with every requirement of the Court's March 20, 2026 Order (ECF 34, "the Order"). The Order required reinstatement of PFACs for seven New York Times journalists, and those PFACs have been reinstated—five have been collected, and the remaining two journalists have indicated they will pick up their credentials next week. The Challenged Provisions identified in the Order as unlawful have been vacated by the Court and are not being implemented or enforced by the Department. Instead, the Department has issued a revised policy (ECF 37-2, "the Revised Policy") that omits the Challenged Provisions and replaces them with meaningfully and materially different provisions that were carefully designed to address the concerns identified in the Court's Opinion.

In arguing otherwise, Plaintiffs' motion mischaracterizes the Revised Policy and, indeed, fails to identify a *single* new provision that violates *anything* in the Court's Opinion, let alone the Court's Order. In fact, the Department was careful to address all of the legal defects that the Court perceived in the prior policy. In some respects, the Department did so by clarifying aspects of its prior policy that Plaintiffs had misconstrued. For example, the Department agrees that journalists should not be prohibited from asking questions at press conferences, that receipt and publication of unsolicited information should be protected, and that routine newsgathering should not be penalized. The Department never intended otherwise—and the Revised Policy makes this explicit, with safe harbors that protect every form of routine newsgathering that the Court identified.

To be sure, the Department continues to disagree with the Court's Opinion and Order, and in particular believes the Court construed the prior policy as being more sweeping than the Department had intended. The Department therefore reserves its right to appeal the Order. But that respectful disagreement is not remotely evidence of "contemptuous defiance" or "flagrant disobedience." ECF 37 (Mot.) at 1, 16. The Revised Policy does not quibble with the Court's

Opinion, let alone its Order; rather, the Revised Policy accepts both, and accounts for the Court's concerns in good faith. Because the Revised Policy is not even arguably inconsistent with the Order, the motion to enforce should be denied.

Of course, if Plaintiffs believe the Revised Policy independently violates the Constitution, or the constitutional principles articulated in the Court's Opinion, they are free to seek relief by filing a new substantive motion or amending their complaint. Indeed, a large part of Plaintiffs' motion to enforce addresses *new* physical access restrictions that were not even part of the case or addressed by the Court's Opinion, let alone its Order. Any new challenge would fail on the merits, because the Revised Policy is perfectly lawful—but regardless, any such new challenge is not the proper subject of a motion to enforce. A motion to enforce is only appropriate if the Department is violating the Order. The Department here plainly is not.

## BACKGROUND

The Court entered its Order on March 20, 2026, vacating the Challenged Provisions, enjoining enforcement of those provisions, and ordering the reinstatement of Plaintiffs' PFACs. ECF 34. On March 23, 2026, the Department replaced the previous policy with a revised policy. On March 24, 2026, the Department issued PFACs for each of the seven New York Times journalists the Court named in its Order.  *See* ECF 37-6 at 2.

On March 24, 2026, at 3:02 PM, Plaintiffs asked for the Department's position on a motion to compel. Ex. A. The Department responded five minutes later to ask for the basis for Plaintiffs' claim of noncompliance. *Id.* The Department then followed up to offer a call with Plaintiffs to discuss any concerns. *Id.* Plaintiffs responded at 5:34 PM without specifically identifying provisions of concern. *Id.* The Department replied via email at 5:50 PM offering reasons the Revised Policy was in compliance, but Plaintiffs filed their motion four minutes later. *Id.* Plaintiffs' Exhibit 8 omits this last email from the Department. The entire interaction shows that the

2

Department engaged in good faith: it offered a call, asked for specifics, and expressed willingness to consider Plaintiffs' position. Plaintiffs instead filed their motion before the parties had finished conferring. The Department attaches to this motion Exhibit A, which contains the omitted email from the Department.

Because Plaintiffs did not confer in good faith prior to filing, they violated this Court's Local Rules, and that is a basis to deny the motion without prejudice. L.R 7(m) ("Before filing any nondispositive motion in a civil action, counsel shall discuss the anticipated motion with opposing counsel in a good-faith effort to determine whether there is any opposition to the relief sought and, if there is opposition, to narrow the areas of disagreement."). This would not be denial based on a mere technicality; because the Department is open to considering further changes to the policy if necessary to avoid additional disputes, as it conveyed earlier this week and reaffirms now, such a meet-and-confer may obviate (or at least minimize) the scope of any dispute.

## LEGAL STANDARD

District courts have the authority to enforce the terms of their mandates. *See The Fund for Animals v. Norton*, 390 F.Supp.2d 12, 15 (D.D.C. 2005). A motion to enforce may be granted only when a "plaintiff demonstrates that a defendant has not complied with a judgment entered against it." *Heartland Hosp. v. Thompson*, 328 F.Supp.2d 8, 11 (D.D.C. 2004). A motion to enforce should be denied if a plaintiff "has received all relief required by that prior judgment." *Id*. (citing *Watkins v. Washington*, 511 F.2d 404, 406 (D.C. Cir. 1975).

## ARGUMENT

The Court's Order included three things: (1) a requirement to reinstate the PFACs of seven named New York Times journalists; (2) a permanent injunction against implementing or enforcing the Challenged Provisions; and (3) vacatur of the Challenged Provisions. Order at 1–3.

3

The Department has done all three. *First*, the Department issued PFACs for each of the seven named journalists. Five of them have collected their credentials; the remaining two have indicated they will pick up their credentials next week. ECF 37-9 at 3. *Second*, the Department issued a Revised Policy that removes every Challenged Provision identified in the Order, and the Department is therefore not implementing or enforcing any of the Challenged Provisions. *Third*, vacatur is self-executing; regardless, the Department superseded the previous policy with the Revised Policy, so by definition the vacated portions of the old policy are not being given effect. The provisions in the Revised Policy are materially different than the Challenged Conditions. The Department has not reimplemented those conditions under a different name.

Plaintiffs argue that the Revised Policy somehow violates the Court's Order. That is wrong; it mischaracterizes the Order, the Revised Policy, or both. Insofar as Plaintiffs claim the Revised Policy is inconsistent with the legal principles in the Court's *Opinion*, that too is mistaken, and it would not support a motion to enforce regardless.

## I.    The Order Does Not Bar the Department from Instituting New Policies.

The Department was not enjoined from revising the PFAC Policy or issuing new policies governing press access. The Order contains one injunction: Defendants are "permanently ENJOINED from implementing or enforcing the Challenged Provisions of the Policy to deny, suspend, revoke, or not renew the PFAC" of Plaintiffs or those who are employed by Plaintiffs. Order at 3. Neither the Opinion nor the Order speaks to the Department's ability to reissue press policies or revise the PFAC Policy in ways that do not revive the Challenged Provisions.

The Department was therefore not restricted from issuing a new policy. *See, e.g.*, *Harmon v. Thornburgh*, 878 F.2d 484, 495 (D.C. Cir. 1989) (explaining that the agency "of course, remains free to promulgate new, narrower regulations, subject to the review of the district court"). Nor would it be proper for the Court to enjoin the Department from issuing new policies. *Id.* Indeed, it

is typical in APA cases for an agency to promulgate a new policy after one is vacated (as the Court did here), and the earlier vacatur or injunction or stay does not foreclose taking new agency action. *See, e.g.*, *Neguse v. U.S. Immigr. & Customs Enf't*, No. 25-CV-2463, 2026 WL 137017, at *1 (D.D.C. Jan. 19, 2026) (denying motion to enforce stay of agency action because "Plaintiffs use the wrong procedural vehicle to challenge the January 8, 2026 memorandum and policy …, which is a new agency action not subject to the Court's prior stay order."); *Asylum Seeker Advoc. Project v. U.S. Citizenship & Immigr. Servs.*, No. 25-cv-3299 (D. Md. Jan. 13, 2026), ECF 70 (same).

In effect, Plaintiffs ask this Court to *expand* the Order to prohibit the Department from ever addressing the security of the Pentagon through a press credentialing policy with conditions that may address similar topics or concerns as the enjoined conditions. The Order does not say that, and this Court should not read it to say that. The Court ruled only that *specific provisions* of the October 2025 Policy were unconstitutionally vague, granted unbridled discretion, and were motivated by viewpoint discrimination. ECF 34 at 1-3. The Order thus enjoined enforcement of those provisions. And the Department fully acknowledges that ruling and is no longer enforcing the Challenged Provisions.

To the extent that Plaintiffs contend that the Revised Policy simply revives the Challenged Provisions using new language, that is completely wrong, and the Department explains below how the revisions meaningfully address the issues that the Court perceived with the prior policy. *See infra* Part II. It is notable, however, that a large part of Plaintiffs' motion is devoted to criticizing the Revised Policy's new physical access restrictions as they relate to Correspondents' Corridor—a set of new provisions that played no part in the litigation to date and clearly were not addressed or foreclosed by the Court's Order. Nothing in the Order purported to restrict the Department from imposing any and all restrictions on physical access to the Pentagon Reservation.

Plaintiffs cite *McComb v. Jacksonville Paper Co.*, 336 U.S. 187 (1949), for the proposition that a party cannot avoid an injunction through "experimentation with disobedience of the law." *Id.* at 192. But *McComb* involved a party that repeatedly violated the same injunction by adopting "measures designed to avoid the legal consequences" while continuing the same unlawful conduct. *Id.* at 193. Here, the Department has not continued the same conduct. It has issued a fundamentally different policy that addresses every concern the Court identified — with a different defined term, a knowledge requirement, six safe harbors, exhaustive factors, evidentiary standards, mandatory timelines, judicial review, and a content-neutrality provision. That is not "experimentation with disobedience"—it is good-faith compliance.

## II.     The Revised Policy Is Consistent with Both the Court's Order and Its Opinion.

Defendants' Revised Policy does not violate the Court's Order. Each new provision is meaningfully, substantially different than the vacated Challenged Provisions. Indeed, Plaintiffs' motion does not identify a single specific provision of the Order that the Department has violated. Instead, Plaintiffs argue that the revised Policy violates the "spirit" of the Order. But a motion to compel compliance can only enforce what the Order says, not some unwritten and inferred spirit. "[S]uccess on a motion to enforce a judgment gets a plaintiff only 'the relief to which [the plaintiff] is entitled under [its] original action and the judgment entered therein.'" *Anglers Conservation Network v. Ross*, 387 F. Supp. 3d 87, 93 (D.D.C. 2019) (quoting *Heartland Reg'l Med. Ctr. v. Leavitt*, 415 F.3d 24, 29 (D.C. Cir. 2005)). The Order *requires* reinstatement of PFACs and *enjoins* enforcement of the Challenged Provisions. The Department has done the required thing. And it has not done the forbidden thing. The Department is therefore not in violation of the Order.

Plaintiffs' real argument is that the Revised Policy is supposedly inconsistent with the legal principles and holdings articulated in the Court's Opinion. Even if that were true, it would support only a new motion for relief on constitutional grounds, not a motion to enforce the Order. In all

6

events, the premise is not true. The Department substantially and meaningfully revised the policy to address the Court's concerns. The Revised Policy makes explicit that asking questions is not a crime. It adds a knowledge requirement so that a journalist will not be at risk of losing a PFAC for ignorantly asking a question that would result in disclosure of classified or controlled information, regardless of whether the Department employee is authorized to release that information. And it makes multiple other substantive changes to account for the legal deficiencies that the Court perceived in the prior version of the policy. There is nothing unlawful about it.

Plaintiffs' central argument is that the revised policy "simply repackages" the vacated provisions. ECF 37 at 2. In support, Plaintiffs selectively quote Commander Parlatore[1] as stating that the revised policy "use[s] more words to say the same thing." *Id.* As to certain issues, the Revised Policy more clearly says what was intended all along, because Plaintiffs and the Court construed the original policy as being broader than intended. Tellingly, Plaintiffs omit the rest of Parlatore's sentence. The full statement, as reported in the article Plaintiffs attach as Exhibit 6, is: "We used more words to say the same thing *and to foreclose creative misinterpretations*." Ex. 6 at 5 (emphasis added). The omitted clause is the entire point: the Revised Policy was intended to more clearly say what was intended all along, because Plaintiffs and the Court construed the original policy as being broader than intended. In other words, the Revised Policy says "the same thing" as the prior version *as the Department construed it*—but it says something very different than the prior policy *as the Court construed it*. Again, that reflects good-faith compliance with the Court's Order and its Opinion.

---

[1] Commander Parlatore is a Special Advisor to the Secretary of War, not litigation counsel.

### A. The Revised Policy complies with the Order.

While Plaintiffs' motion is generalized and imprecise, the Department begins by walking through each of the Challenged Provisions that the Court vacated in its Order, to show the genuine and meaningful changes that the Department made in response. That shows compliance with the Order. The Department then explains in the next section how these changes suffice to cure the constitutional deficiencies that the Court perceived in the prior policy.

1.    The Court vacated this sentence in the first paragraph of the In-Brief: "Failure to abide by these rules may result in suspension of your PFAC and loss of access." AR at 3. In response, the Department made the following revision:

> Failure to ~~abide by these rules~~ comply with the physical access restrictions and conduct requirements set forth in this in-brief may result in suspension or revocation of your PFAC and loss of access to the Pentagon.

ECF 37-3 at 6. The Department thus clarified that a PFAC may be revoked only for non-compliance with physical access restrictions and conduct requirements (requirements that are now, in any event, materially different than in the original policy, *see generally* ECF 37-3). This portion of the Revised Policy complies with the Order because it incorporates different rules than those vacated.

2.    The Court vacated the first paragraph of the In-Brief section entitled "General Security" as well as the following sentence in the second paragraph: "This framework establishes that access is not open to the public or the press as a matter of right but is instead a controlled privilege." AR at 3. In response, the Department made the following revision:

> Members of the news media do not possess a legal right to access the Pentagon; rather, such access is a privilege~~, subject to the discretion of government authorities and is regulated by federal law and Department of War policy. Legally, the press has no greater right of access than the public. While members of the news media may be granted access under certain conditions, this is a privilege~~ extended by the government ~~and not a constitutionally protected right~~ . . . ~~This framework~~

8

~~establishes that access is not open to the public or the press as a matter of right but is instead a controlled privilege.~~ Having chosen to extend this privilege, the Department will not deny, revoke, or suspend a PFAC arbitrarily or on the basis of the content or viewpoint of a journalist's reporting.

ECF 37-3 at 6. The Department thus deleted the majority of the vacated paragraph, and merely stated the legal standard for a non-public forum adopted by the Court. ECF 35 at 26 ("While the government need not open such spaces for any speech at all, the government creates a nonpublic forum when it provides 'selective access for individual speakers. As a nonpublic forum, access to the Pentagon can be restricted as long as the restrictions are viewpoint neutral and reasonable." (internal citations removed)). Thus, this section is in compliance with the Order.

      3.      The Court vacated the final three paragraphs of the section entitled "Public Release of DoW Information and the Protection of Classified National Security Information and Controlled Unclassified Information." AR at 6. In response, the Department made the following revision:

> Only authorized persons who have received favorable determinations of eligibility for access, signed approved non-disclosure agreements, and have a need-to-know may be granted access to CNSI. DoW may only provide CUI to individuals when there is a lawful governmental purpose for doing so.

> To be clear, ~~these are~~ the foregoing laws and regulations ~~that~~ apply to military members ~~and~~, DoW civilian employees, and contractors. Members of the news media are not required to submit their writings to DoW for approval. ~~However, they should understand that DoW personnel may face adverse consequences for unauthorized disclosures (see, e.g., Uniform Code of Military Justice Article 92 (10 U.S.C. 892); 18 U.S.C. 1905; 5 U.S.C. 552a(i)). Any solicitation of DoW personnel to commit criminal acts would not be considered protected activity under the 1ˢᵗ Amendment.~~ Members of the news media remain free to gather information through legitimate means, such as Freedom of Information Act requests, official briefings, questions posed to authorized Department spokespersons and officials, or unsolicited tips, and to publish as they deem newsworthy. The receipt of unsolicited information, including CNSI or CUI, and its subsequent publication, is protected by the First Amendment. Nothing in this in-brief prohibits a PFAC holder from engaging in constitutionally protected journalistic activities, such as investigating, reporting, or publishing stories.

> ~~Unauthorized disclosure of CNSI or CUI poses a security risk that could damage the national security of the United States and place DoW personnel in jeopardy. To~~

~~ensure the safety of U.S. personnel, news media who find themselves in possession of information that appears to be CNSI or CUI should discuss those materials with the PPO prior to publication.~~

ECF 37-3 at 10. The Department thus meaningfully revised this section to remove any perceived limitations on newsgathering and reporting activity and reaffirmed the Department's commitment to First Amendment protections. That complies with the Order.

4.      The Court vacated the following phrase in both the second and third paragraphs of the In-Brief section entitled "PFAC Issuance and Renewals": "... and who have not posed a security or safety risk to DoW personnel or property." AR at 7. In response, the Department made the following revision:

> An initial PFAC expires in three months, on the last day of the third month. You may submit a request for renewal at the beginning of the month of expiration. Media members who have met the minimum monthly visit frequency requirements during the initial three-month probationary period ~~and who have not posed a security or safety risk to DoW personnel or property~~ will generally be approved for a six-month badge. The second probationary period is for six months. Requests for renewals of a six-month PFAC may be submitted at the beginning of the month of expiration. Media members who have met the minimum monthly visit frequency requirements during the six-month probationary period ~~and who have not posed a security or safety risk to DoW personnel or property~~ during both the initial three-month and subsequent six-month probationary periods, will generally be approved for a one-year PFAC.

ECF 37-3 at 11. The Department thus made the changes ordered by the Court and is thus in full compliance with this section of the Order.

5.      The Court vacated the final paragraph of the In-Brief section entitled "PFAC Issuance and Renewals," save its last sentence. AR at 8. In response, the Department made the following revision:

> PFACs may be denied, revoked, or not renewed if a person ~~is reasonably determined to pose a security or safety risk to DoW personnel or property~~<u>meets any of the criteria set forth in Appendix A,</u> or is not meeting the frequency requirements<u>.</u> ~~An initial determination of a security or safety risk may result in an immediate suspension of Pentagon access during the process for making a final determination.~~

10

> ~~A determination that an individual poses a security risk may be based on the unauthorized access, attempted unauthorized access, or unauthorized disclosure of CNSI or CUI.~~ See Appendix A ~~for information~~ on the applicable standards and the process for denying, revoking, or ~~non-renewing~~<u>not renewing</u> a PFAC.

ECF 37-3 at 11. The section was thus struck pursuant to the Order, except for the reference to the new Appendix A. The Department is in full compliance with this section of the Order.

6.      The Court vacated the In-Brief section entitled "Security Risks" in its entirety. AR at 12-13. In response, the Department deleted this section, and is thus in full compliance with the Order. ECF 37-3 at 15-16.

7.      The Court vacated the "Acknowledgment," AR at 14, and the mandate that PFAC holders sign it, AR at 1. In response, the Department removed the acknowledgment and a mandate that PFAC holders sign the revised policy. *See* ECF 37-2 ("the revised policy eliminates the signature requirement"). Thus, the Department is in full compliance with the Order.

8.      The Court vacated Paragraph A of Appendix A to the In-Brief entitled "Denial, Revocation, or NonRenewal of Pentagon Facility Alternative Credentials" in its entirety. AR at 15. In response, the Department made the following revision:

> ~~Reason~~ <u>Grounds</u> for Denial, Revocation, or Non-Renewal. The Director, PFPA, or designee, shall deny, revoke, or refuse to renew the PFAC of any person ~~reasonably determined to pose a security or safety risk to DoW personnel or property. Persons presumed to present such a risk include, but are not limited to, those who have been convicted~~ <u>who meets one or more of the following criteria. These are the sole grounds for denial, revocation, or non-renewal of a PFAC based on security considerations. No PFAC shall be denied, revoked, or not renewed on grounds not enumerated in this section.</u>

ECF 37-3 at 18-19. The effect of this edit removes the Department's discretion in the grounds for PFAC determinations. The Department also added two paragraphs on how it would adjudicate conduct-based PFAC determinations and a description of how a finding by the Department would create a rebuttable presumption that a PFAC should not be issued, as well as a description of how a journalist could rebut that presumption. Finally, the Revised Policy includes a standard of review

for PFAC determinations. As this provision is meaningfully and substantially different from the Challenged Provision, this portion of the Revised Policy complies with the Order.

9.    The Court vacated the following two phrases found in Paragraph B of Appendix A to the In-Brief entitled "Procedures for Denial, Revocation, or Non-Renewal": (1) "or suspended for the reasons outlined above"; and (2) "unrelated to any security or safety risk." AR at 15. In response, the Department made the following revision:

> When an individual's PFAC has been denied, revoked, or not renewed, or suspended for the reasons outlined above pursuant to a final decision under this Part, both unescorted and escorted access to any DoW facility is terminated. This section does not apply to journalists who decide not to renew for reasons unrelated to any security or safety risk the criteria in Part A, such as a change in employment or assignment.

ECF 37-3 at 21. The Department thus struck the Challenged Provisions from the Revised Policy, and did not supplement the language with materially identical language. Thus, the Department is in full compliance with the Court's Order in this respect.

10.    The Court vacated the following sentence found in subparagraph 6 of Paragraph B of Appendix A to the In-Brief entitled "Procedures for Denial, Revocation, or Non-Renewal": "The Director, PFPA, or designee, shall exercise final review authority in the matter." AR at 16. In response, the Department made the following revision:

> At the time of the filing of the written response to the notification of the proposed denial, revocation, or non-renewal, the applicant or holder or representative may request, and shall normally be granted, the opportunity to make a personal appearance before the Director, PFPA, or designee, to personally support his or her eligibility for a pass and to rebut or explain the factual basis for the proposed denial. The Director, PFPA, or designee, shall exercise final review authority in the matter.

ECF 37-3 at 21. The Department thus deleted the vacated language in its entirety and complied with the Court's Order in this respect too.

Nothing in the Court's Order purported to vacate or enjoin any physical access measures in the original policy.  Nonetheless, Plaintiffs devote four pages of their motion to the closure of

12

Correspondents' Corridor and the new escort requirement. Mot. at 12–14. But these physical access measures were not at issue in this litigation to date. They are not prohibited by the Court's Order. The Order specifically identifies the "Challenged Provisions" that were vacated. Order at 1–3. The physical access restrictions—including escort requirements, restricted area designations, and the location of press workspace—are not among them. A motion to compel compliance can only enforce what the Order says. *Anglers*, 387 F. Supp. 3d at 93. The Order says nothing about physical access, escort requirements, or the location of press workspace.

**B. The Revised Policy comports with the legal principles in the Court's Opinion.**

Plaintiffs principally argue that the Revised Policy is at odds not with the *directives* in the Court's *Order*, but with the *legal reasoning* in the Court's *Opinion*. That doubly fails—it is not a basis for a motion to enforce, plus it is wrong on its own terms.

At the outset, that argument is not grounds for a motion to enforce. It is the Order that binds, not the Opinion. If Plaintiffs think the Revised Policy is contrary to the rationale of the Opinion or the legal principles it articulates, the proper remedy is to seek relief through a new substantive motion (for summary judgment, or for a preliminary injunction if they can show irreparable harm). A motion to enforce is appropriate only when new action violates a court's order, which is not the case here. *See Anglers*, 387 F. Supp. 3d at 93 (motion to enforce gets plaintiff only "the relief to which [the plaintiff] is entitled under [its] original action and the judgment entered therein"); *cf. Salazar*, 896 F.3d at 498 ("Courts may not, under the guise of modification, impose entirely new injunctive relief."). Tellingly, Plaintiffs challenge new physical access measures even though their prior motion (and thus the Court's Order) did not question physical access restrictions, escort requirements, or the location of the press workspace. Plaintiffs cannot use a motion to enforce to obtain relief they never sought and the Court never granted.

13

Regardless, the Revised Policy aligns with the Court's Opinion. The Revised Policy explicitly delineates the grounds on which a PFAC will be denied, revoked, or not-renewed and strips out extraneous discretion, thereby addressing the Court's vagueness concerns. ECF 35 at 16-25. The Revised Policy expressly shields journalists from any penalties for routine newsgathering activities, including unknowingly asking for information that a specific Department employee is legally forbidden to disclose, thereby addressing the Court's First Amendment concerns. ECF 35 at 31-36. And the Revised Policy explicitly reaffirms that "no PFAC determination shall be based on the content, viewpoint, or perceived editorial perspective of an applicant's or holder's journalism," thereby addressing the Court's viewpoint discrimination concerns. ECF 35 at 25-31.

1. The Revised Policy clarifies the objective grounds for PFAC determinations and removes discretion, addressing the Court's Fifth Amendment concerns.

This Court held that the original policy "does not provide Department officials with the requisite 'objective and clear standards' for determining whether to deny, revoke, or suspend a journalist's PFAC, thereby permitting—and even encouraging—arbitrary and discriminatory enforcement." ECF 35 at 24; *see also id.* at 33 (finding that original policy's "operative standard—whether a journalist poses a 'security or safety risk'—provides no meaningful limitations on Department officials"). The Revised Policy addresses this concern by revising Appendix A to ensure that the standards for PFAC determinations are concrete and objective.

First, the original policy used "include, but are not limited to" when describing the grounds to make an adverse PFAC determination. The Revised Policy enumerates conviction-based grounds and conduct-based grounds for an adverse PFAC determination. The policy is explicit that these are the "sole grounds" for an adverse determination and "no PFAC will be denied, revoked, or not renewed on grounds not enumerated in this section." ECF 37-2 at 12. The Revised Policy thus comprehensively identifies the conduct that would lead to an adverse determination. *Id.*

14

Second, the Court worried that the policy "expressly retains authority for a Department official to make a different choice—for any reason or for no reason at all." ECF 35 at 33. But the Revised Policy provides that the Department "shall" make an adverse PFAC determination where one of the enumerated criteria is met. ECF 37-2 at 12. The Department may only make a different choice where the applicant demonstrates that maintaining a PFAC is "clearly consistent with the security of the Pentagon Reservation," an inquiry governed by four explicit and objective factors: 1) the nature and seriousness of the offense, 2) the time elapsed since conviction, 3) evidence of rehabilitation, and 4) conduct since the convictions. ECF 37-2 at 12. Thus, the Department cannot make a different choice "for any reason or for no reason at all."

Third, the Court was concerned that the original policy allowed decisions to be made "on a case-by-case basis reviewing the totality of the circumstances" and will turn on "the unique facts and circumstances of each case. ECF 35 at 34. The Revised Policy omits that language.

Finally, the original policy did not include the standard of evidence needed to make an adverse determination. The Revised Policy does. ECF 37-2 at 12.

2. <u>The Revised Policy clarifies that routine newsgathering is not solicitation, and imposes a scienter requirement to address the Court's First Amendment concerns.</u>

The Court held that the original policy "does not clearly distinguish between … impermissible solicitation and plainly lawful journalistic practices" and that "a journalist would have no way of knowing what information has been authorized for release and what has not." ECF 35 at 22. The Department rewrote this entire section to address that concern.

The original policy used the term "solicitation," had no scienter requirement to limit its scope, and included no safe harbors for journalistic activity. AR at 12-13. Instead of forbidding solicitation, the Revised Policy prohibits "intentional inducement of unauthorized disclosure," and includes a "knowingly" scienter requirement, such that a journalist is only at risk if he seeks out

classified or controlled information that he *knows* the specific Department employee at issue is *legally forbidden* to disclose. This addresses the Court's concern that "a journalist would have no way of knowing what information has been authorized for release and what has not." ECF 35 at 22. Absent such knowledge, a journalist faces no penalty under the Revised Policy.

Further, the Revised Policy includes six safe harbors that are carved out, notwithstanding the general definition of "intentional inducement of unauthorized disclosure," each of which was designed to address concerns in the Court's opinion: a) asking questions of authorized personnel, regardless of subject matter; b) receiving unsolicited information, including classified or controlled information; c) publishing calls for tips or other appeals to the public at large; d) developing source relationships through independent reporting; e) communicating with Department personnel through official channels for public disclosure of information; and f) asking questions of any Department employee where the journalist does not know that the employee is not authorized to disclose the information sought.

These revisions were constructed to capture only the narrow actions that the previous policy was intended to capture: intentional and knowing solicitation of disclosure of information that specific Department employees are legally forbidden to disclose to the public.

3. The Revised Policy explicitly disavows viewpoint discrimination.

The Court also found that "the record is replete with undisputed evidence that the Policy is viewpoint discriminatory." ECF 35 at 27. The Department addressed that concern by including an explicit contrary directive in the Revised Policy: "No PFAC determination shall be based on the content, viewpoint, or perceived editorial perspective of an applicant's or holder's journalism." ECF 37-2 at 10. Unless the Court intends to hold that every press regulation undertaken by the Department is equally tainted by viewpoint-discriminatory animus—which would be plainly untenably—that explicit reaffirming of neutrality must be sufficient to address this concern.

16

### C. The Revised Policy is otherwise constitutional.

Plaintiffs also gesture at the notion that the Revised Policy violates the Constitution, independent of this Court's Opinion. That, of course, is not grounds for a motion to enforce. *See supra* at 13-14. It is also legally indefensible. Plaintiffs cite almost no legal authority, and in fact the law is clear that none of the provisions to which they object are unconstitutional.

### 1. Knowingly inducing a violation of law is not protected by the First Amendment.

There is no constitutional right to knowingly and intentionally bring about an unlawful act. *United States v. Hansen*, 599 U.S. 762, 783 (2023) ("Speech intended to bring about a particular unlawful act has no social value; therefore, it is unprotected."); *United States v. Williams,* 553 U.S. 285, 298 (2008) ("Many long established criminal proscriptions—such as laws against conspiracy, incitement, and solicitation—criminalize speech (commercial or not) that is intended to induce or commence illegal activities."); *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949) (First Amendment does not protect "speech or writing used as an integral part of conduct in violation of a valid criminal statute."). And nobody here claims that Department employees have a constitutional right to disclose classified or controlled information, contrary to criminal statutes. *Haig v. Agee,* 453 U.S. 280, 308–09 (1981) (defendant's "repeated disclosures of intelligence operations and names of intelligence personnel" are "clearly not protected by the Constitution"); *United States v. Kim*, 808 F. Supp. 2d 44, 56 (D.D.C. 2011) ("Because § 793(d) makes it unlawful to communicate national defense information to those not entitled to receive it, courts have held that the First Amendment affords no protection for this type of conduct even though it clearly involves speech."); *United States v. Morison*, 844 F.2d 1057, 1069 (4th Cir. 1988) (government employee who willfully disclosed confidential information to others "is not entitled to invoke the First Amendment as a shield").

17

The Revised Policy accords with those established principles by providing that an applicant may not receive a PFAC if the applicant "intentionally encourage[s], induce[s], or request[s] that a specific Department employee disclose classified national security information or CUI that the journalist knows that the specific Department employee is not authorized to disclos[e]" under a set of statutes. ECF 37-2 at 10. The Revised Policy does not reach protected speech because it only forbids knowing and intentional inducement of unlawful conduct—*i.e.*, an intentional effort to cause a Department employee to violate the law. Indeed, while Plaintiffs cite *Counterman v. Colorado*, that case *supports* the Department's policy—it held that a recklessness standard sufficed to prevent a chilling effect on protected speech in the context of a criminal provision, 600 U.S. 66, 80 (2023), whereas the Revised Policy here requires *actual knowledge* (a higher scienter standard) in a *non-criminal* context (where concerns about chill are lessened).

To prove the scienter element, the Revised Policy states that "[a] journalist's offer of anonymity or privacy protection to a Department employee in exchange for information shall create a rebuttable presumption that the journalist knew the employee was not authorized to disclose the information sought." ECF 37-2 at 10-11. And that presumption can be rebutted: the journalist merely needs to provide evidence that he or she "did not know that the employee was unauthorized to disclose the information notwithstanding the offer for anonymity." *Id.* This is lawful too. *See Chemical Mfrs. Ass'n v. Dep't of Transp.*, 105 F.3d 702, 705 (D.C. Cir. 1997) ("A presumption is normally appropriate when 'proof of one fact renders the existence of another fact 'so probable that it is sensible and timesaving to assume the truth of [the inferred] fact … until the adversary disproves it"); *Cablevision Sys. Corp. v. FCC*, 649 F.3d 695, 717 (D.C. Cir. 2011) (upholding rebuttable presumptions against a First Amendment challenge).

18

Agencies often rely on evidentiary presumptions as a reasonable and efficient way to prove fact that may be otherwise difficult to establish. And here the presumption is reasonable—the most obvious reason to offer anonymity to a Department employee is because the journalist knows the employee is not authorized by law to disclose the information sought.

Plaintiffs' sparse caselaw is not to the contrary; indeed, each case is facially inapposite. *See Zerilli v. Smith*, 656 F.2d 705, 711 (D.C. Cir. 1981) (holding that journalist could not be compelled to disclose a confidential source); *The Fla. Star v. B.J.F.,* 491 U.S. 524, 538 (1989) (punishing truthful reporting based on public government news release violated First Amendment); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 576 (1980) (recognizing First Amendment right to access places traditionally open to the public).

2. Neutral physical access restrictions are constitutional.

The press has no constitutional right of special access to government facilities beyond that afforded to the general public. *See Branzburg v. Hayes*, 408 U.S. 665, 684 (1972) ("The First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally."). The press area within the Pentagon was a non-public forum. *See Ateba v. Leavitt*, 133 F.4th 114, 121–22 (D.C. Cir. 2025) (holding that the White House Press Area is a nonpublic forum—"government property that is not by tradition or designation a forum for public communication"). The established rule for non-public forums is that the government is "not required to open such spaces for any speech at all," but when it does, access "can be restricted as long as the restrictions are viewpoint neutral and reasonable." *Id.* at 123 (quoting *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985)).[2]

---

[2] Plaintiffs do not dispute that the Secretary has statutory authority over the Pentagon Reservation and to impose regulations to ensure its security. *See* 10 U.S.C. § 2674 (Secretary is authorized to "prescribe appropriate regulations to ensure the safe, efficient, and secure operation of the Pentagon Reservation").

19

In the Revised Policy, the Department provided that certain areas previously designated as open to the press would be closed, and all journalists who enter the Pentagon will require an escort at all times. (A new, designated area for the press will be established.) ECF 37-2 at 3. Those new regulations are viewpoint-neutral. Both the space limits and the escort requirement apply to all PFAC holders equally, regardless of their news organization or the content of their reporting. Every credentialed journalist—whether from the New York Times, Fox News, Newsmax, or the so-called "new press corps"—is subject to the same restrictions and requirements.

The access regulations are also reasonable. The relocation of the press workspace fulfills a commitment the Department announced in the October 6, 2025 Policy—before this lawsuit was filed—to "upgrade the space used by PFAC holders to a different area that provides WiFi access and cell phone service, as well as increased space for the expanded press corps." AR-11. The Department has made workspace available at the Pentagon Library and Conference Center (PLC2), which provides upgraded facilities including cellular phone reception, WiFi access, and expanded workspace.

As for the escort requirement, the Department determined that unescorted access to the Pentagon cannot be responsibly maintained under current circumstances. Plaintiffs cite Commander Parlatore's statement that the escort requirement restricts the ability of journalists to "talk in the hallways and be able to induce unauthorized disclosures." ECF 37 at 3. Indeed, the Department has a legitimate security interest in preventing inducement of criminal conduct in its own headquarters. That interest does not disappear because the person doing the inducing holds a press credential. It would be dangerous and unprecedented for a court to compel the Department to provide *anyone* with unescorted access to the Pentagon.

20

Amicus PPA compares PFAC holders to "food service workers, concession employees, [and] hall-roaming baristas," Dkt. 38-1 at 6, but the analogy is inapt. The escort requirement addresses a specific information-security concern: the risk that journalists—whose professional purpose in the building is to obtain information—will encounter Department personnel who are not authorized to speak with the press and who may be induced to disclose classified national security information or controlled unclassified information in violation of federal law. Commercial vendors operating in designated retail areas of the Pentagon—a cashier, florist, or barista—do not present this risk. They are not seeking nonpublic information from Department personnel. They are not in a position to induce unauthorized disclosures. The security concern that drives the escort requirement is unique to individuals whose professional purpose in the building is to gather information, including nonpublic information.

### 3.   The revised policy is not retaliatory

Finally, while Plaintiffs suggest the Revised Policy is somehow "retaliatory," that cannot possibly be correct. The Revised Policy applies to every PFAC holder and is meant to secure the Pentagon. Plaintiffs are unable to support their retaliation claims with any case law. *Media Matters for America v. Paxton* involved a media company was "targeted" by government action. 138 F.4th 563, 570 (D.C. Cir. 2025). But here, no one is being targeted; the Revised Policy is generally applicable. They also cite *National Rifle Association of America v. Vullo*, 602 U.S. 175 (2024), but *Vullo* involved a government official who coerced private parties to sever business relationships with a speaker to punish that speaker's advocacy. *Id.* at 1. Here, the Department is not coercing anyone; it is exercising its own statutory authority over its own facility. The escort requirement does not suppress any speech—it simply requires that journalists be accompanied by Department personnel when inside the Pentagon, which is a physical security measure that applies to all PFAC holders equally.

**CONCLUSION**

The Department has complied with every requirement of the Order. The specified journalists' PFACs have been reinstated. The Challenged Provisions have been vacated. The Revised Policy cures every alleged deficiency the Court identified—with exhaustive objective factors, a knowledge requirement, six safe harbors, evidentiary standards, mandatory timelines, judicial review, and a content-neutrality provision. The physical access measures are a proper exercise of the Secretary's statutory authority, apply to all PFAC holders equally, and are not covered by the Order. Plaintiffs' motion thus asks this Court to do what the Order does not: prohibit the Department from ever addressing the security of the Pentagon through a press credentialing policy, and prohibit the Department from exercising its statutory authority over physical access to its own facility. The Court should deny the motion.


DATED: March 27, 2026                    Respectfully submitted,

                                         BRETT A. SHUMATE
                                         Assistant Attorney General

                                         SARAH WELCH
                                         Counsel to the Assistant Attorney General

                                         JOSEPH E. BORSON
                                         Assistant Branch Director

                                         */s/ Michael Bruns*
                                         MICHAEL BRUNS
                                         Trial Attorney
                                         United States Department of Justice
                                         Civil Division, Federal Programs Branch
                                         1100 L Street, N.W.
                                         Washington, DC 20005
                                         michael.bruns@usdoj.gov

                                         *Counsel for Defendants*

22