# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

THE NEW YORK TIMES COMPANY, *et al.*

*Plaintiffs,*

v.

DEPARTMENT OF DEFENSE A/K/A
DEPARTMENT OF WAR,
*et al.*,

*Defendants.*

Civil Case No. 25-cv-04218 (PLF)

## THIRD SUPPLEMENTAL DECLARATION OF JULIAN E. BARNES

I, Julian E. Barnes, hereby declare as follows:

1. I am over the age of 18 and make this declaration based upon my personal knowledge and experience. If called to do so, I could and would competently testify to these matters under oath.

2. I am a plaintiff in the above-captioned case. I make this declaration in support of Plaintiffs' Post-Hearing Brief in Support of Plaintiffs' Motion to Compel Compliance with the Court's Order granting Plaintiffs' Motion for Summary Judgment.

3. As explained in my prior declaration dated March 29, 2026, I spoke with a member of the Pentagon Press Office staff on March 24, 2026 about accessing the library, among other topics. *See* ECF No. 44-1 (Supplemental Declaration of Julian E. Barnes) ¶ 9; ECF No. 45 (Second Supp. Decl. of Julian E. Barnes) ¶¶ 6–7. Mr. Valdez was not present when that conversation took place, and I stand by the accuracy of my statements.

4. Since my last declaration, I have experienced firsthand the restrictions that the Interim Policy places on PFAC holders' ability to access the Pentagon. Those restrictions are

1

making it exceedingly challenging to speak with press officials and other personnel, and to otherwise cover the Department and the U.S. military from Pentagon grounds.

5. On Monday, March 30, 2026, following the hearing on my and The New York Times's motion to compel compliance with the Court's order, and in response to a request that I had made three days earlier, on Friday, March 27, 2026, I received an invitation to interview a Department official at the Pentagon the following day, Tuesday, March 31, 2026. The press office later requested that interview be on background—meaning he would be an anonymous source. The interview was set for 12:45 p.m., but the press officer recommended I arrive at 12:15 p.m. to navigate security issues. The press officer entered the information for the visit into the Pentagon system, and I received an automatic confirmation.

6. On Tuesday, March 31, 2026, I arrived at the Pentagon at 12:10 p.m. and entered the Visitor Center security area. I showed the attendant behind the glass my driver's license and the PFAC. I entered my social security number upon his request. I was advised that individuals holding PFACs must enter through corridor 8. I replied that I had an appointment and the escort was going to meet me in the Visitor's Center. The supervisor repeated that anyone with a PFAC could enter only through corridor 8. This was despite the fact that I was told to meet my escort in the Visitor's Center and the fact that before I could have simply entered through the main gate using my PFAC. After I arrived at the Pentagon, the interview was postponed, and I was immediately escorted out of the building.

7. As that experience made clear to me, my PFAC does not provide me access to the Pentagon building and provides access only to the separate library building. By contrast, and like visitors who do not hold a PFAC, I may access the Pentagon building only upon invitation or approval by Department officials, and only with an escort. Neither I nor, to my knowledge, any

of my colleagues have been told about the criteria used in determining whether to approve such a request, though the Interim Policy does state that no more than three PFAC holders from the same news organization will be provided an escort per day.

8.     Going through a sometimes-lengthy process of scheduling official appointments in order to ask even one or two questions to an official—even assuming that request is granted and that official does not have to reschedule—does not allow for meaningful engagement with Department personnel on a timeline consistent with news reporting.  As I stated in a prior declaration, reporting from the Pentagon has historically necessitated speaking to upwards of a dozen officials and other personnel from different press offices in a given day, sometimes in response to rapidly developing events.  While I used to be able to walk from press office to press office throughout the day, I now would have to return to the library, call or email for an appointment, and wait for a response and approval, and for arrangement for and arrival of an escort.  That means I will be spending hours of my day just waiting and walking back and forth—assuming I can get ahold of press offices and individuals and arrange interviews and be approved for an escort at all. That process will dramatically interfere with my ability to meaningfully engage with anyone from the Department on Pentagon grounds, or to obtain the information necessary to inform the public in a timely manner.

9.     Mr. Valdez's declaration suggests that these requirements are meant to ensure that my colleagues and I do not ask for or receive classified or otherwise protected information in the Pentagon corridors between public affairs offices.  If so, these limitations are wholly unnecessary. In my experience, Pentagon officials and personnel are not permitted to and do not discuss classified or national-security sensitive information in Pentagon hallways.

10.     Mr. Valdez's description of how the Department's "presumption" related to a reporter's agreement to speak to a source anonymously or on background will be applied in practice is also inconsistent with my decades of experience as a journalist.  Mr. Valdez contemplates a sharp distinction between situations in which an individual comes to the journalist with specific information and demands anonymity to disclose it, and ones in which the journalist comes to the source requesting a specific piece of information and offers anonymity. In the real world, journalists have conversations with sources that may span multiple topics. Conversations sometimes go on and off the record, with it unclear exactly who initiated what or how a mutual agreement about proceeding without attribution affected the individual's willingness to share information.

11.     Finally, Mr. Valdez's description of the press conference that occurred at the Pentagon on Tuesday, March 31, 2026, as "seamless[]," ECF No. 46 (Supp. Decl. of Joel Manuel Valdez) ¶ 27, is not consistent with my understanding.  Another Times reporter, Greg Jaffe, attended the press conference.  I understand that all reporters, including PFAC holders, were required to arrive by 7 a.m. for the press conference scheduled for 8 a.m., and that they were required to wear wristbands, in addition to the two identification cards we are required to wear within the Pentagon, which were repeatedly checked throughout the scheduled event.  This process is the same as the process that was in place for reporters that did not hold a PFAC before this Court issued its March 20, 2026 order.  I also understand that reporters were told they need to have an escort to use the restrooms and could not use the restrooms after 7:30 a.m. because it would present a security risk.

I declare under penalty of perjury that the foregoing is true and correct.

5

Executed this __2__ day of April 2026 in _____Nashville_____.

_____
Julian E. Barnes