**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

THE NEW YORK TIMES COMPANY, et al.,

*Plaintiffs*,

v.

UNITED STATES DEPARTMENT OF DEFENSE, et al.,

*Defendants*.

Civil Action No. 1:25-cv-04218-PLF

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF**

Since this Court's summary judgment opinion, the parties have filed a motion to compel, an opposition, a reply, two Valdez declarations, three Barnes supplemental declarations, a post-hearing brief, and this response—all on the threshold question of whether the Department has complied with the Court's Order. The volume and nature of these filings only underscore that a motion to compel is the wrong vehicle for challenging a new agency policy. What Plaintiffs are actually litigating is the constitutionality of the Revised Policy—a question that requires a revised complaint and full merits briefing, not a cascading series of supplemental declarations and post-hearing briefs appended to a procedural motion. The Department respectfully submits that the appropriate course is for this Court to deny the motion to compel while permitting Plaintiffs to propose a schedule to challenge the Revised Policy on the merits.

As for the substance of Plaintiffs' new arguments, they cite two recent decisions that are facially inapposite. Both involved patent viewpoint discrimination, whereas the Revised Policy is a generally applicable set of rules that apply equally to all press outlets and viewpoints. Plaintiffs also once again grossly mischaracterize the Revised Policy. By its terms, the Revised Policy fully complies with the Constitution, and with this Court's prior Opinion and Order.

1

**1.** At the outset, Plaintiffs' supplemental brief makes almost no effort to explain how or why the Revised Policy is inconsistent with this Court's Order, which is the only proper subject of a motion to enforce. Indeed, the first half of the supplemental brief is devoted to attacking the new physical access restrictions, which did not even exist when the complaint was filed, when the administrative record was compiled, when the parties briefed the issues, or when the Court issued its Opinion. This focus confirms that Plaintiffs' objection is to new aspects of the Department's Revised Policy, not with Defendants' compliance with this Court's order.

To try to tether these new arguments to the Court's Order and distinguish the caselaw that the Department cited, Plaintiffs suggest that the Department is violating the injunction requiring it to "reinstate" PFACs for the seven named journalists. *See* Supp. Br. 5 & n.2. Although there is no dispute that the Department returned their PFACs, Plaintiffs argue that the PFACs no longer carry the "same bundle" of rights in light of the Revised Policy. *Id.* It is absurd and untenable, however, to suggest that the Court's injunction was intended to freeze in time all of the Department's press policies and forbid any future changes, even changes that are otherwise lawful. That is not what the Order said, and reading the Order that way would render it indefensibly overbroad.

Nothing in *ILGWU v. Donovan*, 733 F.2d 920 (D.C. Cir. 1984), suggests otherwise. In that case, the agency issued an emergency rule that "simply reimplement[ed] precisely the same rule that this court vacated." *Id.* at 922-23. As the D.C. Circuit quickly clarified, that decision did not change the established, "logical" rule that an agency may "correct a prior rule which a court has found defective" and "need not seek modification of that injunction" before doing so. *NAACP v. Donovan*, 737 F.2d 67, 73 (D.C. Cir. 1984). Here, the Department has not reissued "precisely the same rule." It has issued a materially different policy with a knowledge requirement, safe harbors, evidentiary standards, mandatory timelines, judicial review, and a neutrality guarantee.

**2.** Although it is procedurally improper to address the merits of the Revised Policy in this posture, Plaintiffs' new arguments on that score are undeveloped and unsubstantiated.

    **a.** With respect to the new physical access restrictions (the designation of a new space for the press, and the escort requirement), Plaintiffs argue that they amount to "viewpoint discrimination." Supp. Br. at 2-3. That makes little sense. These requirements apply equally to all PFAC holders. The designated workspace has been moved for *all* journalists, regardless of their viewpoint. And the escort requirement likewise governs *all* journalists, regardless of their viewpoint. Requiring every journalist to be accompanied by an escort while visiting the Pentagon cannot be viewpoint discrimination, because it applies regardless of viewpoint.

The new cases upon which Plaintiffs rely could hardly be less analogous. Indeed, both of them involved *facial* viewpoint discrimination. In *Chiles v. Salazar*, the Colorado law presented an obvious case of viewpoint discrimination, as it "prescribe[d] what views [a speaker] may and may not express," forbidding therapy aimed at changing the client's sexual orientation or gender identity but not therapy aimed at reinforcing it. — U.S.—, 2026 WL 872307, at *9 (U.S. Mar. 31, 2026). In *National Public Radio, Inc. v. Trump*, the government "concede[d]" that the executive order at issue was "viewpoint based" because it explicitly "single[d] out two—and only two—speakers for adverse treatment based on the viewpoint of their speech." — F. Supp. 3d —, 2026 WL 877434, at *21, *23 (D.D.C. Mar. 31, 2026). Neither case has any relevance here. Unlike in *Chiles*, the Revised Policy does not apply differently based on the viewpoint of the journalist. To the contrary, it explicitly reaffirms that "[n]o PFAC determination shall be based on the content, viewpoint, or perceived editorial perspective of an applicant's or holder's journalism." ECF No. 37-2 at 14. And, unlike in *NPR*, the Revised Policy does not single out a specific journalist or outlet. It applies equally to all PFAC holders. That is the opposite of discriminatory.

Plaintiffs also argue that the new physical access requirements are improper because they provide the Department with too much discretion and lack "discernible standards."  Supp Br. at 1-2.  That completely mischaracterizes the Revised Policy.  The Revised Policy does not allow escort to be denied on "whims" of the Department. Supp Br. at 2.  Rather, it states that "PFAC holders will continue to have access to the Pentagon," but that access will simply be escorted rather than unescorted. ECF 37-2 at 2.  The Policy does not entail any exercise of discretion by the Department, so it is hard to understand Plaintiffs' criticism that it somehow amounts to an "unbridled-discretionary licensing regime."  Supp. Br. at 1.[1]  Plaintiffs' real objection, as a policy matter, is that journalists can no longer roam the Pentagon unattended (just as they cannot roam around the Department of Justice, or the Court's chambers).  But that is not a violation of the First Amendment, *see Minn. Voters All. v. Mansky*, 585 U.S. 1, 11-12 (2018), much less a violation of the Court's Order, which says nothing on this topic.

Finally, in his Third Supplemental Declaration, Mr. Barnes recounts being turned away from the Visitor's Center on March 31, 2026.  His account is correct: The escort assigned to Mr. Barnes was not fully briefed on the revised access procedures.  Since that visit, the Department has made accommodations to allow reporters to be escorted through both the Visitor's Center and Corridor 8.  The issue has been resolved.  *See* Valdez Second Supp. Decl. ¶¶ 7-9.[2]

**b.**  With respect to the Revised Policy's provisions about intentional inducement of unauthorized disclosures, Plaintiffs continue to insist that it threatens journalists for merely "asking

---

[1] To be sure, Department officials remain entitled to choose to give one-on-one interviews to particular journalists.  But such selectivity does not offend the First Amendment.  *See Associated Press v. Budowich*, 2025 WL 1649265 (D.C. Cir. June 6, 2025); *Baltimore Sun Co. v. Ehrlich,* 437 F.3d 410, 418 (4th Cir. 2006).  Plaintiffs do not appear to argue otherwise.

[2] Although this aspect of the Third Supplemental Barnes Declaration is accurate, his prior declarations have contained multiple inaccuracies. The Second Supplemental Declaration of Joel Manuel Valdez addresses and corrects some of the latest Barnes declaration's errors.

questions." Supp. Br. at 3. That is not what the Revised Policy says or does. Rather, intentional inducement occurs only when a journalist *affirmatively attempts* to induce a *specific Department employee* to disclose information that the journalist *knows* the employee is *legally forbidden* to disclose by one of three statutes—and even then, only if none of the six safe harbors applies. Plaintiffs do not argue that such an intentional inducement of unlawful conduct is constitutionally protected. It manifestly is not. *See United States v. Hansen*, 599 U.S. 762, 771 (2023).

Instead, Plaintiffs argue that another limiting feature of the Revised Policy—that it will be enforced only based on complaints from Department employees, not by scouring media reports for potential leaks, Supp. Valdez Decl. ¶¶ 30-33—is not binding. Supp. Br. at 4. But the Revised Policy's operative constraints—the knowledge requirement, the "specific Department employee" element, and the six safe harbors—are all explicit, and those constraints are sufficient to render the policy constitutional. Regardless, the representations in the Valdez declaration are themselves binding on the Department. *See Weaver v. U.S. Info. Agency*, 87 F.3d 1429, 1437 (D.C. Cir. 1996); *New Hampshire v. Maine*, 532 U.S. 742, 749-51 (2001).

At minimum, Plaintiffs' baseless fear about how the Department might enforce the Revised Policy in an overbroad manner in the future (Supp. Br. 4-5) is not sufficient to justify an injunction (much less the order to enforce that Plaintiffs seek). Indeed, the Revised Policy includes robust due-process procedures—which Plaintiffs do not challenge—to ensure that a journalist does not face revocation for conduct that does not violate the Revised Policy's objective standards.

For these reasons, the Court should deny Plaintiffs' procedurally improper, substantively meritless motion, and instead set a schedule for any challenge to the Revised Policy.

DATED: April 6, 2026                    Respectfully submitted,

                                        BRETT A. SHUMATE
                                        Assistant Attorney General

SARAH WELCH
Counsel to the Assistant Attorney General

JOSEPH E. BORSON
Assistant Branch Director

/s/ Michael Bruns
MICHAEL BRUNS
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
michael.bruns@usdoj.gov

*Counsel for Defendants*