**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| THE NEW YORK TIMES COMPANY, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF DEFENSE, et al., <br><br> *Defendants*. |

Civil Action No. 1:25-cv-04218-PLF

The Department moves for an immediate stay pending appeal of the Court's March 20, 2026, Order and the Court's April 9, 2026, Order (Orders) to the extent they vacate and enjoin the Pentagon's new physical access restrictions—the escort requirement and the physical access limitations.[1] Because each of the stay factors weigh in favor of allowing the Court of Appeals to assess the constitutionality of the Department's press policies governing physical access to the headquarters of the United States military, the Court should grant the government's motion to stay the Orders with respect to the physical access restrictions. In the alternative, the Department requests a fourteen-day administrative stay to allow for orderly briefing in the D.C. Circuit on the Department's forthcoming stay motion.

The Department is likely to succeed on appeal. The Department's new policy requiring that all journalists be escorted when on Pentagon grounds plainly comports with the First Amendment: "government office building[s]" are quintessential "nonpublic forums," and access to such buildings "can be restricted as long as the restrictions are viewpoint neutral and reasonable." *Ateba*

---

[1] Pursuant to L.R. 7(m), counsel for Defendants conferred with counsel for Plaintiffs on April 10, 2026, regarding the motion. Plaintiffs oppose the requested relief.

1

*v. Leavitt*, 133 F.4th 114, 122-23 (D.C. Cir. 2025). The Court's summary judgment decision concluded that the prior policy—which established procedures for revoking press credentials, and identified conduct that would be grounds for revocation—was unlawfully vague and impermissibly discriminated based on viewpoint. That opinion and order did not analyze or consider the escort policy because it was not part of the media access rules that were before the Court at summary judgment. And the premises that animated the Court's summary judgment opinion simply have no application to the escort policy: there has been no suggestion that the policy is vague, and it applies uniformly to *all* members of the media, regardless of viewpoint. Nor is the escort requirement impermissible because it was implemented in response to the Court's rejection of the prior policy. It is routine—and entirely appropriate—for agencies to adapt to adverse judicial rulings by developing new, lawful means to advance their legitimate objectives.

Absent a stay, allowing members of the public unfettered access to the Pentagon poses unique and acute dangers. The Department developed its new physical access restrictions to ensure that the Pentagon is secure and that national security information is protected. The Court's Orders supersede the Department's judgments about how to achieve those ends. Under the Court's Orders, the Department must allow people to enter the headquarters of the Department on terms that its leadership have determined do not adequately protect national security. The Department manifestly has both the responsibility and the obligation to ensure that the Pentagon is secure and that sensitive information is protected.

Accordingly, the Department moves for an immediate stay of the Court's Orders to the extent they require the Department to immediately allow reporters unescorted access to the Pentagon. That aspect of the Court's Order imposes clear, substantial, and immediate burdens and risks.

## ARGUMENT

In considering a stay pending appeal, this Court considers four factors: the likelihood of success on the merits, the movant's irreparable injury, the balance of harms, and the public interest. *Nken v. Holder*, 556 U.S. 418, 426 (2009).

### I.    The Government Is Likely To Prevail On The Merits

The physical access restrictions were not part of the challenged press access policy, and the Court did not identify how the physical access restrictions were unconstitutional. The Court instead reasoned that the new policy ran afoul of its earlier summary judgment order.  But the earlier order had nothing to do with physical access restrictions, and neither of the legal bases for that order has any bearing on the post-judgment physical access restrictions, which provide that PFAC holders may not access the Pentagon unescorted.  There is nothing unconstitutionally vague about a clear, blanket policy.  Plaintiffs have no First Amendment right to unescorted access to a secure federal office building, and the new restrictions on physical access to the Pentagon are viewpoint-neutral and reasonable in any event.

This Court should not have enjoined a lawful policy solely because, in the Court's judgment, the policy was implemented in part as a response to its earlier order.  Agencies are generally free to respond to court decisions by issuing new policies in response, and the Department's physical access restrictions are plainly lawful.  The government is likely to succeed in showing that the Court should not have required the Department to allow PFAC holders unescorted access to the Pentagon.

### A.    The Press Access Policy is Lawful

The physical access restrictions that the Court enjoined are constitutional, and the Court did not conclude otherwise.  There has been, and could be, no suggestion that the escort policy is unclear or vague.  *See* ECF 35 at 16-25.  And the press has no constitutional right of special access

3

to government facilities beyond that afforded to the general public.  *See Branzburg v. Hayes*, 408 U.S. 665, 684 (1972) ("The First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally.").  The Pentagon is a non-public form, even as to the areas previously set aside for use of the press.  *See Ateba v. Leavitt*, 133 F.4th 114, 121–22 (D.C. Cir. 2025) (holding that the White House Press Area is a nonpublic forum—"government property that is not by tradition or designation a forum for public communication").  The established rule for such non-public forums is that the government is "not required to open such spaces for any speech at all," but if it does, access "can be restricted as long as the restrictions are viewpoint neutral and reasonable."  *Id.* at 123 (quoting *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985)).[2]

The physical access restrictions fully comply with those requirements.  Requiring all journalists who enter the Pentagon to be escorted at all times is both viewpoint- and content-neutral.  The escort requirement applies to all PFAC holders equally, regardless of their news organization or the content of their reporting.  The access restrictions are also reasonable.  The Department determined that unescorted access to the Pentagon cannot be responsibly maintained under current circumstances—but it has not prevented PFAC holders from accessing the building entirely or from gaining access to Department spaces and personnel in the Pentagon as necessary to do their journalistic work.

Particularly given the unique nature of the Pentagon, the Department's decision to impose those reasonable restrictions should not be particularly surprising: Press and visitors to federal buildings, including federal court houses, are not typically allowed free, unescorted access to

---

[2] Plaintiffs do not dispute that the Secretary has statutory authority over the Pentagon Reservation and to impose regulations and restrictions to ensure its security. *See* 10 U.S.C. § 2674.

places where federal employees conduct sensitive work. The ordinary business of the Pentagon deals with highly sensitive materials, dissemination of which could have serious consequences for America's security. Imposing reasonable restrictions on building access is a sensible response to those concerns.

**B.**    **The Press Access Policy Does Not Violate the Court's Injunction**

This Court did not address any of the above in its decision yesterday. Instead, it held that the new policy somehow violated its prior injunction, which dealt with entirely distinct policies about press credential revocation. The Department is likely to succeed on appeal in challenging that conclusion.

To start, nothing in the Court's summary judgment order or opinion purported to vacate or enjoin any physical access measures. Those measures are therefore not prohibited by the Court's summary judgment order. The summary judgment order specifically identified the "Challenged Provisions" that were vacated. ECF 34 at 1-3. No physical access restrictions were among them. Indeed, no physical access measures were challenged in Plaintiffs' complaint, and neither the parties' summary judgment briefing nor the Court's opinion addressed the constitutionality of such uniform restrictions on unescorted Pentagon access. The summary judgment order says nothing about physical access, escort requirements, or the location of press workspace.

Nor can the Court's summary judgment order reasonably be read to preclude the Department from issuing new policies related to press access that are different in kind from the provisions that the Court vacated and enjoined. The summary judgment order vacated the challenged provisions. And it contained just one injunction: that Defendants are "permanently ENJOINED from implementing or enforcing the Challenged Provisions of the Policy to deny, suspend, revoke, or not renew the PFAC" of Plaintiffs or those who are employed by Plaintiffs.

ECF 34 at 3.  Neither the summary judgment order or opinion speaks to the Department's ability to issue new press policies or to revise the PFAC Policy in ways that do not revive or implement the challenged provisions.  The Department was therefore not restricted from issuing a new policy, particularly a new policy that differs in kind from any of the provisions addressed in the Court's summary judgment opinion.

Nor does it matter that, at some level, the physical access restrictions were designed to accomplish the same goal as the enjoined provisions—ensuring the security of the Pentagon and the protection of sensitive information.  Those objectives are plainly legitimate ones, and nothing in the Court's summary judgment order or opinion contested that the Department has a duty to ensure the security of the Pentagon or suggested that the Department could not pursue its security interests through alternative means that are clear and viewpoint-neutral.  There is nothing extraordinary about an agency of any kind issuing a new policy that attempts to achieve the agency's legitimate objectives in a lawful manner after an agency's first attempt has been held unlawful.  *See, e.g.*, *Department of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 21 (2020) (observing that an agency may generally "deal with the problem afresh by taking new agency action" (quotation and emphasis omitted)).  Indeed, the D.C. Circuit has squarely held that "it is both logical and precedented that an agency can engage in new rulemaking to correct a prior rule which a court has found defective' and that an agency 'need not seek modification of [an] injunction before it initiates new rulemaking to change the regulation." *NAACP v. Donovan*, 737 F.3d 67, 72 (D.C. Cir. 1984).

Nor are the new restrictions from the physical access restrictions a basis to conclude that the Department violated the Court's order just because PFAC holders do not have the same right of access to the Pentagon as they did before the Department issued its new policies. While the

Court may have determined that Plaintiffs had shown irreparable injury from the prior policies the Court had held constitutional, this does not mean the Court found a constitutional right to a particular physical access policy in perpetuity. The Court could not have found such a right, because there remains no general right to access the Pentagon or any other federal office building simply because such access would be "journalistically productive." Indeed, the Department could permissibly deny access to the Pentagon altogether. *See Ateba*, 133 F.4th at 122 ("[T]he government is not required to open [nonpublic fora] for any speech at all"). By the same token, there is nothing improper about a viewpoint-neutral policy that requires an escort for access to the Pentagon. There is no basis to enjoin the physical access restrictions in the absence of any conclusion that the policy itself is unconstitutional simply because Plaintiffs may view it as less desirable for their work.

## II.    The Remaining Factors Favor a Stay.

The remaining factors—irreparable harm, the balance of harms, and the public interest— likewise favor the requested stay. The threatened harm to the government plainly outweighs the limited harm to plaintiffs of being escorted around the Pentagon rather than roaming at will.

Allowing the injunction to stay in effect threatens irreparable injuries to the government and the public, whose interests "merge" in this context. *Nken*, 556 U.S. at 435. The Court's Orders compel the Department to allow members of the press to enter and roam the Pentagon unescorted, notwithstanding the Department's judgment that continuing to allow that kind of unfettered physical access poses national security risks by, among other things, threatening unauthorized disclosure of sensitive information.

It would be dangerous and unprecedented for a court to compel the Department to provide *anyone* with unescorted access to the Pentagon. Indeed, as explained in the Department's

7

declaration accompanying this motion, the Department's changes in its access policy were made in response to very real concerns about the frequency with which sensitive information, including highly classified national defense information, was reaching journalists. Wilson Decl. ¶¶ 4-6. The Department concluded that regular, unauthorized dissemination of sensitive information "posed serious risks to national security." *Id.* ¶¶ 12-13. And the reinstatement of "unescorted access to the Pentagon for PFAC holders" will, in the Department's judgment, "almost certainly" result in resumption of the patterns of conduct that the Department believes to have contributed to that problem. *Id.* ¶¶ 14-16.

As noted, the harms associated with the injunction are exacerbated because the Court did not conclude that the access policy runs afoul of any constitutional right. Nor is it in question that the Secretary has statutory authority to impose regulations and restrictions to ensure the Pentagon's security. *See* 10 U.S.C. § 2674. The Court's Orders, which prohibit the Executive Branch from carrying out lawful authority, impose an inherent irreparable harm by working "an improper intrusion by a federal court into the workings of a coordinate branch of the Government." *Immigration & Naturalization Serv. v. Legalization Assistance Project of the L.A. Cty. Fed'n of Labor*, 510 U.S. 1301, 1305–06 (1993) (O'Connor, J., in chambers).

By contrast, Plaintiffs suffer no cognizable harm if the Department's physical access restrictions are allowed to go into effect. As noted, members of the press have no constitutional right to unescorted access to secure federal buildings. And Plaintiffs suffer no cognizable harm by being given reasonable, escorted access to the Pentagon in order to perform their work. Indeed, the D.C. Circuit previously concluded that a journalist was not harmed by delays in obtaining a pass that would afford him unescorted access to the White House because he could obtain escorted access in the interim. *Ateba*, 133 F.4th at 117, 127.

**CONCLUSION**

This Court should stay its Orders barring enforcement of the physical access restrictions pending appeal. At minimum, the Court should grant a fourteen-day administrative stay to allow for orderly briefing at the D.C. Circuit. *See, e.g., Nat'l Trust for Historic Pres. in the U.S. v. Nat'l Park Serv.,* __ F. Supp. 3d ___, 2026 WL 877779, at *16 (D.D.C. Mar. 31, 2026) (granting a 14 day stay to allow for D.C. Circuit briefing); *Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209, 233 (D.D.C. 2025) (Contreras, J.) (staying a preliminary injunction "for fourteen days so that the parties may seek review in the Court of Appeals"); *Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Noem*, 793 F. Supp. 3d 19, 111 (D.D.C. 2025) (Moss, J.) ("postpon[ing] the effective date of its class-wide order for fourteen days to permit Defendants to seek a stay pending appeal from the Court of Appeals"); *Citizens for Resp. & Ethics in Wash. v. Off. of Mgmt. & Budget*, 791 F. Supp. 3d 29, 60 (D.D.C. 2025) (Sullivan, J.) (granting summary judgment to plaintiffs but entering administrative stay).

DATED: April 10, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

SARAH WELCH
Counsel to the Assistant Attorney General

JOSEPH E. BORSON
Assistant Branch Director

*/s/ Michael Bruns*
MICHAEL BRUNS
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.

9

Washington, DC 20005
michael.bruns@usdoj.gov

*Counsel for Defendants*